LAW OFFICES OF SIMON HARTER, ESQ.
Simon Harter (SH-8540)
304 Park Avenue South – 11th Floor
New York, New York 10010
(212) 979-0250 – Phone
(212) 979-0251 – Fax
Attorneys for Plaintiff, Petraco Oil Co. Ltd.



**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x

PETRACO OIL CO. LTD.,

                Plaintiff,

 -against-                                      **VERIFIED COMPLAINT**

                                                     08-cv-03115 (PAC)(THK)

PROGETRA SA,

                Defendant.

-----------------------------------------------------------x

      Plaintiff, PETRACO OIL CO. LTD., by its Attorneys, Law Offices of Simon Harter, Esq., as and for its Verified Complaint against the named Defendant, PROGETRA SA, alleges upon information and belief as follows:

      1.     This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure, in that it involves claims for breach of various maritime aspects related to a sales contract between the parities. This case also falls under this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. §1333, and this Court's federal question jurisdiction pursuant to 28 U.S.C. §1331. Finally, this Court also has jurisdiction over this matter because this action also arises under the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201 *et seq.*

2. At all times relevant hereto, Plaintiff, Petraco Oil Co. Ltd., was and still is a foreign business entity organized and existing under the laws of Italy with a registered office at 26 Glategny Esplanade, St. Peter Port, Guernsey, Channel Islands.

3. At all times relevant hereto, Defendant, Progetra SA, was and still is a foreign business entity organized and existing under the laws of Russia, with a registered office at Viale Stefano Franscini 16, CH-6900, Lugano, Switzerland.

4. On or about June 27, 2004, Plaintiff and Defendant entered into a contract pursuant to which Plaintiff would buy and Defendant would sell four cargoes of gasoil of 30,000 metric tons (five percent more or less) each per month for a total quantity of approximately 1,500,000 metric tons. *See* Exhibit "A" hereto.

5. In the course of performance of the contract, Defendant incurred various obligations under Clause 7, entitled "DELIVERY/PERIOD, and/or Clause 11, entitled "LAYTIME AND DEMURRAGE", of the contract for demurrage and other charges relating to the carriage of goods by sea totaling approximately US $658,168.44.

6. The aforementioned charges, although duly invoiced by Plaintiff, have not been paid by Defendant in breach of the contract.

7. As a consequence of the aforementioned breach of contract by Defendant, Plaintiff has suffered damages in the amount of US $658,168.44, plus interest, legal fees and arbitration costs, and all other recoverable items of damages.

8. Plaintiff, for its part, has satisfied all of its obligations under the terms of the contract.

- 3 -

9. The contract provides, in Clause 15, that it shall be governed by and construed in accordance with English law and that any disputes arising thereunder shall be submitted exclusively to arbitration in London, England.

10. Plaintiff reserves all of its rights to arbitrate its substantive claims against Defendant in accordance with the contractual provision for arbitration in London.

11. In addition to an attachment in the full amount of the claim as outlined above, Plaintiff also seeks attachment over an additional sum to cover its anticipated attorneys' fees and arbitration costs and interest, all of which are recoverable in London arbitration.

12. Plaintiff estimates, to the best of its ability, that it will take approximately two years before an arbitration award is likely to be rendered in the instant action.

13. Given this time frame, Plaintiff seeks to attach funds sufficient to cover its anticipated claim of interest during the aforementioned period in the estimated amount of US $90,589.64, which is calculated at a rate of six and a half percent, compounded quarterly, for two years.

14. Plaintiff also seeks to attach funds sufficient to cover its anticipated legal fees and arbitration costs, the recoverable portion of which is presently estimated at US $35,000.00.

15. Based upon the foregoing, the sum total sought to be attached in this action is US $783,758.08, consisting of Plaintiff's principal claim of US $658,168.44, interest of US $90,589.64 and recoverable legal fees and arbitration costs under English law of US $35,000.00.

16. Upon information and belief, and after investigation, Defendant cannot be "found" within this District for the purpose of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, but Plaintiff avers, on information and belief, that Defendant

has, or will have during the pendency of this action, assets within this District comprising, *inter alia*, cash, funds, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, or any other tangible or intangible property, of, belonging to, due, claimed by or being held by or for the benefit of Defendant (hereinafter "assets"), located at, moving through, or held by, any garnishee(s) located within this District, including but not limited to HSBC (USA) Bank; Bank of America N.A.; The Bank of New York; Citibank N.A.; JPMorganChase Bank; Standard Chartered Bank; Wachovia Bank N.A.; Deutsche Bank AG; Barclays Bank PLC; UBS A.G.; Credit Suisse; Nordea Bank Finland PLC; Fortis Bank SA/NV; ABN-AMRO Bank N.V.; American Express Bank Ltd.; Bank of China, and/or others.

      **WHEREFORE**, Plaintiff, PETRACO OIL CO. LTD., prays:

a.     That process in due form of law according to the practice of this Court may issue against Defendant, PROGETRA SA, citing it to appear and answer the foregoing, and failing such appearance and answer, to have judgment by default against the Defendant in the principal amount of the claim, plus interest, costs and reasonable attorneys' fees;

b.     That if Defendant cannot be found within this District pursuant to Supplemental Rule B, that all assets of Defendant up to and including the sum of US $783,758.08, may be restrained and attached, including but not limited to any cash, funds, credits, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire, sub-charter hire, and/or other assets of, belonging to, due, or for the benefit of, Defendant, including but not limited to such assets as may be held, received or transferred in their own name or as may be held, received or transferred for its benefit at, moving through, or within the possession, custody or control of banking institutions including but not limited to HSBC (USA) Bank, Bank of America, The Bank of New York, Citibank N.A., JPMorganChase Bank, Standard Chartered Bank, Wachovia Bank N.A., Deutsche Bank AG, Barclays Bank PLC, UBS A.G., Credit Suisse, Nordea Bank Finland PLC, Fortis Bank SA/NV, ABN-AMRO Bank N.V., American Express Bank Ltd., Bank of China, and/or any other garnishees(s) upon whom a copy of the Process of Maritime Attachment and Garnishment issued in this action may be served;

  c. That this Court retain jurisdiction over the matter for any further or supplemental proceedings as may be necessary in order to give effect to the London arbitration; and

  d. For such other, further and different relief as this Court may deem just and proper in the circumstances.

Dated: March 26, 2008

                **LAW OFFICES OF SIMON HARTER, ESQ.**
                Attorneys for Plaintiff, PETRACO OIL CO. LTD.,

        By: */s/ Simon Harter/*
           Simon Harter (SH-8540)
           304 Park Avenue South – 11th Floor
           New York, New York 10010
           (212) 979-0250 (Phone)
           (212) 979-0251 (Fax)

- 6 -

## ATTORNEY VERIFICATION

STATE OF NEW YORK        )
                         ) ss.:
COUNTY OF NEW YORK       )

SIMON HARTER verifies the following pursuant to 28 U.S.C. §1746:

1. I am a member of the Law Offices of Simon Harter, Esq., Attorneys for Plaintiff, PETRACO OIL CO. LTD., in this action and a Member of the Bar of this Honorable Court. I have read the foregoing Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, information and belief.

2. The sources of my information and the grounds for my belief are communications, information, and documentation provided by the Plaintiff and/or its duly authorized agents.

3. The reason this Verification is made by an attorney and not the Plaintiff is because the Plaintiff is a foreign entity, none of whose officers are presently within this Judicial District.

I declare under penalty of perjury that the foregoing is true and correct. Executed on the 26th day of March, 2008.

_____
Simon Harter (SH-8540)
Law Offices of Simon Harter, Esq.
304 Park Avenue South – 11th Floor
New York, New York 10010
(212) 979-0250 - Phone
(212) 979-0251 - Fax

# EXHIBIT "A"

*Attn: Ms ELENA*

CONTRACT No. P-09/3

MOSCOW                                                                                      27 JULY 2004

1. SELLER:
---------

PROCETRA S.A.,
VIALE STEFANO FRANSCINI 16, CH-6900
LUGANO
SWITZERLAND

2. BUYER:
---------

PETRACO OIL COMPANY LTD
26, GLATEGNY ESPLANADE, P.O. BOX 357
ST. PETER PORT
GUERNSEY
CHANNEL ISLANDS

3. PRODUCT(S):
--------------

GASOIL 0.2 PCT SULPHUR MAXIMUM.

4. QUALITY:
-----------

THE QUALITY SHALL BE GASOIL AS NORMALLY EXPORTED FROM NOVOROSSIYSK
MEETING THE FOLLOWING GUARANTEED SPECIFICATIONS:

| | |
|---|---|
| DENSITY AT 20 DEG C KG/L NOT MORE | 0.860 MAX |
| CETANE INDEX    NOT LESS | 45 MIN |
| VISCOSITY AT 20 DEG C (MM2/S) | 3 MIN    6 MAX |
| FLASH POINT (CLOSED CUP) DEG C NOT LESS | 62 MIN |
| POUR POINT DEG C NOT MORE | -10 MAX |
| CLOUD POINT DEG C | -5 |
| SULPHUR % NOT MORE | 0,2 |
| MERCAPTANE SULPHUR % NOT MORE | 0,008 |
| H2S CONTENT | ABSENT |
| TEST WITH COPPER PLATE | POSITIVE |
| ALKALI | ABSENT |
| ACIDITY MG KON/100 G GASOIL NOT MORE | 10 |
| IODINE NUMBER G IODINE/100 G GASOIL NOT MORE | 6 |
| OXYD ASHES % NOT MORE | 0,005 |
| CONTRADSON CARBON RESIDUE 10TH% OF REST | 0,25 |
| FILTERING COEFFICIENT NOT MORE | 3 |
| DISTILLATION DEG C | |
| - 50 PCT DEG C NOT MORE | 280 MAX |
| - 96 PCT DEG C NOT MORE | 360 MAX |
| SEDIMENTS | ABSENT |

QUALITY TO BE TESTED PER GOST METHODS.

5. QUANTITY:
----------

FOUR CARGOES OF 30,000 METRIC TONS +/- 5 PCT (ONE CARGO PER MONTH IN BUYER'S OPTION AND THREE CARGOES PER MONTH IN SELLER'S OPTION) EACH PER MONTH. EXACT VOLUMES TO BE MUTUALLY AGREED EACH CALENDAR MONTH. EACH CARGO TO BE LOADED IN ONE LOT AS FULL CARGO.

6. NOMINATION:
----------

IT IS BUYER'S RESPONSIBILITY TO NOMINATE VESSEL TO SELLER LATEST 3 (THREE) WORKING DAYS PRIOR THE 1ST DAY OF THE 2(TWO) DAYS AGREED LAYCAN IN ORDER TO ALLOW SELLERS TO OBTAIN A LAYCAN AND STEM CONFIRMATION. IN ANY CASE THE NOMINATED VESSEL IS ALWAYS SUBJECT TO ACCEPTANCE BY THE LOADING TERMINAL.

SUCH NOMINATION TO REACH SELLERS AND TO INCLUDE:
EXACT NAME OF THE VESSEL, FLAG, DATE OF BUILT, DWT, ARRIVAL AND FULLY LADEN DRAFT, LOA, BEAM, ETA LOADPORT, CARGO GRADE AND THE QUANTITY OF CARGO TO BE LOADED.
PORT RESTRICTIONS:
TANKER WITH A DEADWEIGHT KEEPING VESSEL'S LOADING TO A DRAFT OF NOT MORE THAN: 12,0 METERS AND LENGTH OF UP TO 200 M.

GASOIL WILL BE SHIPPED OUTSIDE THE TERRITORY OF THE MEMBER STATES OF THE FORMER USSR.

SELLER IS RESPONSIBLE FOR CLEARANCE STEM WITH LOADING TERMINAL.
BUYER IS RESPONSIBLE FOR CLEARANCE VESSEL WITH HARBOUR AUTHORITIES VIA THEIR LOCAL VESSEL AGENTS.

IF THE NOMINATED VESSEL IS LATE FOR HER AGREED POSITION ALL FINES, LOSSES AND EXPENSES CONNECTED WITH THE OVERFILLING OF THE TERMINAL AND THE RESULTING BLOCKAGE OF THE RAILWAY WILL BE FOR THE BUYERS' ACCOUNT. THESE CLAIMS SHOULD BE FULLY DOCUMENTED INCLUDING A COPY OF RAILWAY CLAIMS AND CLAIMS FROM THE TERMINAL. THE SELLERS SHALL MAKE AN EFFORT TO MINIMIZE SUCH EXPENSES.

7. DELIVERY/PERIOD:
----------

ONE SAFE ACCESSIBLE PORT/ONE SAFE ACCESSIBLE BERTH NOVOROSSIYSK, KOMBINAT IMPORTPISCHEPROM TERMINAL PROVIDED BY SELLER FREE OF CHARGE TO BUYER, FOB BASIS NOVOROSSIYSK. DURING THE PERIOD WITHIN JANUARY-DECEMBER 2005 PER VESSELS TO BE NOMINATED BY BUYER.

THE 26TH OF THE MONTH PRECEEDING DELIVERY BUYER TO INDICATE SELLER A 10 DAYS WINDOW. SELLER TO NARROW DOWN SUCH 10 DAYS WINDOW TO 2 DAYS LATEST BEFORE THE END OF THE MONTH PRECEEDING DELIVERY MONTH.

8. DETERMINATION OF QUALITY AND QUANTITY:
----------

QUALITY TO BE ASCERTAINED AT LOAD PORT BY MUTUALLY AGREED, FIRST CLASS INTERNATIONAL INDEPENDENT INSPECTOR ("SAYBOLT") WHOSE FINDINGS

SHALL BE FINAL AND BINDING ON BOTH PARTIES SAVE FRAUD OR MANIFEST ERROR.

BILL OF LADING QUANTITY IN THE PORT OF LOADING WILL BE FINAL AND BINDING FOR BOTH PARTIES SAVE FOR FRAUD OR MANIFEST ERROR.
QUALITY TO BE BASED ON SHIP'S TANKS COMPOSITE SAMPLE DRAWN AFTER LOADING.
INSPECTION COSTS TO BE SHARED 50/50 BETWEEN BUYER AND SELLER.

9. PRICE:
------

PRICE BASED ON B/L QUANTITIES (IN VAC) AT LOAD PORT (SAVE FRAUD OR MANIFEST ERROR) FOB BASIS NOVOROSSIYSK, EXPRESSED IN US DOLLARS PER METRIC TON:

EQUAL TO THE HIGH QUOTATION PUBLISHED BY PLATT'S EUROPEAN MARKETSCAN UNDER THE HEADINGS "FOB (MED) ITALY» FOR GASOIL 0.2 APPLICABLE ON BILL OF LADING DATE MINUS / PLUS A DISCOUNT / PREMIUM IN USD (TO BE AGREED BETWEEN THE PARTIES TEN DAYS BEFORE ARRIVAL OF THE VESSEL TO LOAD PORT AT THE LATEST). IF WITHIN THE AFORE MENTIONED PERIOD THE PARTIES DID NOT MANAGE TO AGREE THE PRICE THE SELLERS RESERVE THE RIGHT TO SELL THE CARGO IN QUESTION TO THE THIRD PARTY.

IF NO PLATT'S IS PUBLISHED ON THE B/L DATE, THEN THE IMMEDIATELY PRECEDING QUOTATIONS TO APPLY.

THIS PRICE IS BASED ON THE DENSITY AT 15 DEG C OF 0.845 AND WILL ESCALATE/DE-ESCALATE ARITHMETICALLY ACCORDING TO THE ACTUAL DENSITY CONSISTENT WITH THE B/L MEASUREMENT AND CONVERTED BY THE INDEPENDENT INSPECTOR FROM 20 DEG C TO 15 DEG C. (VAC-VAC / AIR-AIR)

SUCH ESCALATION/DE-ESCALATION WILL BE DIVIDED 50/50 BUYER/SELLER.
PRICING TO BE ROUNDED TO TWO (2) DECIMALS.

10. PAYMENT:
---------

PAYMENT FOR THE GOODS IN THE AMOUNT OF 6 000 000,00 (SIX MILLION) US DOLLARS WILL BE EFFECTED IN ADVANCE ACCORDING TO FOLLOWING SCHEDULE:
2 000 000,00 (TWO MILLION) US DOLLARS ON THE 29 OF JULY, 2004 AT THE LATEST.
1 500 000,00 (ONE MILLION AND FIVE HUNDRED THOUSANDS) US DOLLARS ON 05 OF SEPTEMBER AT THE LATEST
500 000 (FIVE HUNDRED THOUSAND) US DOLLARS LATEST 28 SEPTEMBER 2004
2 000 000,00 (TWO MILLION) US DOLLARS DURING OCTOBER 2004.
FOR THE QUANTITY OF ABOUT 1 500 000,000 MTS OF GASOIL 0,2 TO BE DELIVERED UNDER THE PRESENT CONTRACT F.O.B. NOVOROSSIYSK WITHIN JANUARY-DECEMBER 2005 AGAINST PROVISIONAL INVOICES OF SELLERS.

THE PREPAYMENT TO BE REFUNDED BY THE SELLERS WITHIN JANUARY-DECEMBER 2005.

125 000 USD TO BE DEDUCTED FROM EVERY INVOICE FOR A CARGO DELIVERED EX NOVOROSSIYSK WITHIN JANUARY-DECEMBER 2005.
THE A.M. INVOICES WILL ALSO CONTAIN A DEDUCTION OF ONE MONTH LIBOR RATE ON BILL OF LADING DATE PLUS 3 PCT FOR THE NUMBER OF DAYS BETWEEN ACTUAL PAYMENT DATE AND THE DATE OF PREPAYMENT.

PAYMENT TO BE EFFECTED IN USD BY TELEGRAPHIC TRANSFER IN IMMEDIATELY AVAILABLE FUNDS, PAYABLE AT THE COUNTERS OF SELLER'S BANK, WITHOUT OFFSET, DISCOUNT OR COUNTERCLAIM (EXCEPT STATED HEREABOVE) AND FREE OF ALL CHARGES.

FOR THE REST PAYMENTS COVERING THE AMOUNT OF CARGOES VALUE BUYER TO OPEN AN IRREVOCABLE STAND-BY LETTER OF CREDIT THROUGH A FIRST CLASS BANK AND IN A WORDING BOTH TO BE ACCEPTABLE TO SELLER AND SELLER'S BANK LATEST 5 WORKING DAYS PRIOR THE 1ST DAY OF AGREED 2 DAYS LAYCAN.

PAYMENT SHALL BE MADE UPON PRESENTATION OF INVOICE (FAX COPY IS ACCEPTABLE) AND FULL SET ORIGINAL BILLS OF LADING AND OTHER USUAL SHIPPING DOCUMENTS.

IN THE EVENT THAT THE SHIPPING DOCUMENTS ARE NOT AVAILABLE BY DUE DATE, PAYMENT TO BE MADE AGAINST SELLER'S INVOICE AND LETTER OF INDEMNITY (FAX ACCEPTABLE FOR BOTH WITH HARD COPIES TO FOLLOW SOONEST) IN A FORM TO BE ACCEPTABLE TO BUYER.

THESE DOCUMENTS, AS WELL AS OTHER DOCUMENTS REQUIRED FOR PAYMENT PURPOSES, SHOULD BE IN BUYER'S OFFICE MINIMUM ONE (1) CLEAR WORKING DAY BEFORE THE DATE OF PAYMENT IN ORDER PAYMENT CAN BE ARRANGED IN TIME OTHERWISE PAYMENT WILL BE DELAYED ACCORDINGLY.

SELLERS WILL PAY BUYERS INTEREST FOR EACH DAY FOR THE PERIOD FROM THE DATE OF PAYMENT TILL 10 CALENDAR DAYS AFTER B/L DATE (B/L DATE = DAY ZERO) AT ONE MONTH LONDON INTERBANK OFFERED RATE (LIBOR) PLUS 1 (ONE) PERCENT ON THE DATE WHEN PAYMENT OF THE INVOICE AMOUNT SHOULD HAVE BEEN MADE. THE RATE WILL BE APPLIED ON THE BASIS OF QUOTATION PUBLISHED BY THE INTERNATIONAL SWAP AND DERIVATIVES ASSOCIATION (REUTER'S PAGE ISDA).

IF PAYMENT FALLS DUE ON A SATURDAY OR BANK HOLIDAY OTHER THAN A MONDAY IN NEW YORK, PAYMENT SHALL BE MADE ON THE LAST PRECEDING BANKING DAY. IF PAYMENT FALLS DUE ON A SUNDAY OR MONDAY BANK HOLIDAY IN NEW YORK, PAYMENT SHALL BE MADE ON THE NEXT SUCCEEDING BANKING DAY.

11. LAYTIME AND DEMURRAGE :
----------------------------
VESSEL NOMINATED SHOULD BE EQUIPPED TO RECEIVE A MINIMUM LOADING RATE OF 1200 METRIC TONS PER HOUR PER ONE PUMP. IF THIS REQUIREMENT IS MISSED ALL CONSEQUENCES OF THE DEMURRAGE OF THE NOMINATED VESSEL ARE FOR BUYER'S ACCOUNT.

IF THE PERFORMING VESSEL CAN MEET THE ABOVE THE LAYTIME ALLOWED TO BE FIFTY PERCENT OF WHAT IS AVAILABLE UNDER CHARTER PARTY ( PRO RATED FOR PART CARGO) PLUS 6 HOURS N.O.R.
THE MASTER WILL CABLE OR TELEX TO SELLERS AND TO THE SHIPOWNER'S AGENTS 96/72/48/36/24/12 HOURS ETA NOTICES TO ARRIVAL LOADPORT NOVO.

SELLERS RESPONSIBILITY WILL BE TO PROVIDE BUYERS WITH CARGO WITHIN AGREED LAYCAN. ANY DELAY IN BERTHING VESSEL DUE TO UNAVAILABILITY OF CARGO NOT BELONGING TO SELLER OR BUYERS INABILITY TO CONFIRM MAIN CARGO WILL BE STRICTLY FOR BUYERS ACCOUNT.

IF ACTUALLY INCURRED, AS PER CHARTER PARTY RATE, TERMS AND CONDITIONS AND EXCEPTIONS OF THE BUYER'S VESSEL. BUYER'S DEMURRAGE CLAIM IF ANY TO BE FULLY DOCUMENTED (INCLUDING A COPY OF OWNER'S CLAIM, LAYTIME CALCULATION AND CHARTER PARTY) AND PRESENTED WITHIN 90 DAYS AFTER BILL OF LADING DATE, FAILING WHICH THEIR CLAIM SHALL BE DEEMED WAIVED AND ABSOLUTELY BARRED.

## 12. TAXES:

ALL TAXES, DUTIES, FEES, QUAY DUES AND OTHER CHARGES TO BE PAID INSIDE THE TERRITORY OF THE FORMER USSR ARE AT SELLER'S EXPENSE. ALL TAXES, DUTIES, FEES AND OTHER CHARGES TO BE PAID OUTSIDE THE TERRITORY OF THE FORMER USSR ARE AT BUYER' EXPENSE.

## 13. LIMITATION OF LIABILITY:

EXCEPT AS EXPRESSLY PROVIDED IN THIS AGREEMENT, NEITHER SELLER NOR BUYER SHALL BE LIABLE FOR CONSEQUENTIAL, INDIRECT OR SPECIAL LOSSES/DAMAGES OF ANY KIND ARISING OUT OF OR IN ANY WAY CONNECTED WITH THE CONCLUSION, THE PERFORMANCE, THE FAILURE TO PERFORM OR THE TERMINATION OF THIS AGREEMENT.

## 14. TITLE AND RISK:

PROPERTY IN THE PRODUCT, ALL RISKS AND LIABILITIES WITH RESPECT THERETO SHALL PASS TO BUYER WHEN THE PRODUCT PASSES THE FLANGE CONNECTION BETWEEN THE DELIVERY HOSE AND THE PERMANENT HOSE CONNECTION OF THE VESSEL AT THE LOADING TERMINAL.

## 15. LAW AND JURISDICTION:

THE CONTRACT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH ENGLISH LAW (WITHOUT REFERENCE TO ANY CONFLICT OF LAW RULES). THE U.N. CONVENTION ON CONTRACTS FOR THE INTERNATIONAL SALE OF GOODS (1980) SHALL NOT APPLY.
ANY DISPUTES HEREUNDER SHALL BE SETTLED WITHIN THE EXCLUSIVE JURISDICTION OF THE LONDON ARBITRATION.

16. FORCE MAJEURE :
----------------

NEITHER PARTY SHALL BE DEEMED IN BREACH OF THIS AGREEMENT AS A RESULT OF AND BE LIABLE TO THE OTHER FOR ANY FAILURE, OMISSION OR DELAY IN ITS PERFORMANCE IN WHOLE OR IN PART OF ANY OF THE TERMS AND CONDITIONS OF THIS AGREEMENT EXCEPT OBLIGATION TO EFFECT PAYMENT IN DUE TIME TO THE EXTENT THAT SUCH FAILURE, OMISSION OR DELAY ARISES OR RESULTS FROM ANY CAUSE BEYOND THE CONTROL OF A PARTY INCLUDING BUT NOT LIMITED TO:
- COMPLIANCE, VOLUNTARY OR INVOLUNTARY, WITH A DIRECTION OR REQUEST OF ANY INTERNATIONAL, NATIONAL, PORT, TRANSPORTATION, LOCAL GOVERNMENT OR OTHER AUTHORITY OR PERSON PURPORTING TO ACT WITH SUCH AUTHORITY;
- STRIKE OR OTHER LABOUR DIFFICULTY FROM WHATEVER CAUSE ARISING, EVEN THOUGH IT COULD BE SETTLED BY ACCEDING TO THE DEMANDS OF A LABOUR GROUP;
- NATURAL CALAMITY, FIRE, EXPLOSION;
- WAR, HOSTILITIES DECLARED OR UNDECLARED, EMBARGO, BLOCKADE, CIVIL UNREST, RIOTS, TERRORISM, AND ANY CONSEQUENCE THEREOF;
- PERILS OF THE SEA, STORM, FLOODS, HAZARDOUS WEATHER OR OTHER ACTS OF GOD;
- HINDRANCES TO TRANSPORTATION OR DELIVERY, LOSS OF TANKER TONNAGE WHETHER OR NOT BY REQUISITION, WRECKAGE OF EQUIPMENT, BREAKDOWN OF MACHINERY OF THE VESSEL OR ADVERSE WEATHER;
PROMPT WRITTEN NOTICE OF ANY SITUATION OF FORCE MAJEURE AND, SO FAR AS POSSIBLE OF ITS EXTENT AND DURATION AS WELL AS OF ITS SUSPENSION IN FULL OR IN PART, SHALL BE GIVEN BY THE PARTY SO AFFECTED.
THE TIME OF SELLER TO MAKE, OR BUYER TO RECEIVE, DELIVERY HEREUNDER SHALL BE EXTENDED DURING ANY PERIOD IN WHICH DELIVERY SHALL BE DELAYED OR PREVENTED BY REASON OF ANY OF THE FOREGOING CAUSES UP TO A TOTAL OF THIRTY (30) DAYS. IF ANY DELIVERY HEREUNDER SHALL BE SO DELAYED OR PREVENTED FOR MORE THAN THIRTY (30) DAYS, EITHER PARTY MAY TERMINATE THIS CONTRACT WITH RESPECT TO SUCH DELIVERY UPON WRITTEN NOTICE TO THE OTHER PARTY.

19. OTHER CONDITIONS:
---------------------

WHEN NOT INCONSISTENT WITH THE ABOVE, INCOTERMS FOB 2000 AND SUBSEQUENT AMENDMENTS SHALL APPLY.

20. OPERATIONAL CONTACT:
------------------------

OPERATIONAL MATTERS FOR THIS CONTRACT WILL BE HANDLED BY:

PETRACO OIL COMPANY LTD
========================

26, GLATEGNY ESPLANADE, PO BOX 357
ST. PETER PORT
GUERNSEY
CHANNEL ISLANDS

PROGETRA S.A.

PROGETRA S.A.
VIALE STEFANO FRANSCINI 16, CH – 6900
LUGANO, SWITZERLAND
BANKING DETAILS:

BNP PARIBAS (SUISSE) S.A., GENEVA, GENEVA CH
US-DOLLAR ACCOUNT 82403/2N

RZB, WIEN, ACCOUNT NO.: 570-50.969.260

MOSCOW OFFICE:
RUSSIA, MOSCOW,
113035, RAUSHSKAYA NAB., 16, 8TH FLOOR
TEL: +7 095 789 89 59
FAX: +7 095 789 89 58
CONTACT PERSONS: AGISHEVA OLGA


SELLER:                                    BUYER:
PROGETRA S.A.                              PETRACO OIL COMPANY LTD.

Addendum № 102
To the Contract No P-09/3 dated 27 July 2004

Moscow                                                                                           28 September 2007

Company "Progetra S.A" hereinafter referred to as "Sellers" and Messrs "Petraco oil Company Ltd" hereinafter referred to as "Buyers", for the purpose of this Contract both referred to as the "Parties", have agreed following amendment:

For the cargo of ULSD to be shipped during October 05 – November 10, 2007 on m/t "TBN" / sub in several lots of about 4 000 – 15 000 mtons each (Seller to try on a best endevours basis but without strict obligations on its side to load max to 20 000 mtons) the price should be as follows:

For the quantity 24 000 +/- 10% in Seller's option the price should be calculated as follows:
Average of High quotations for Diesel 50 ppm as published by Platt's European Marketscan under the heading "Cargoes CIF NWE" during October 01-31, 2007 both dates inclusive minus a discount of USD 14,00 per metric ton.
Above price is based on a density at 15 deg c of 0.8450 and will escalate/de-escalate arithmetically according to actual b/l density at 15 deg c as per bill of lading.
The loading dates should be mutually agreed between the parties.

Quality: according to GOST R 52368-2005 (grade C, type II) as normally dispatched from Ryazan refinery with Cloud point: max -5.0 deg. C, CFPP: max – 15.0 deg C, Flash point min 60 deg C.
The cargo could be doped for CFPP and cloud point improvement, the cost of services to be equally split between Buyers and Seller.

Payment:
Payment in USD by telegraphic transfer in immediately available funds, payable at the counters of Seller's bank, without offset, discount or counterclaim and free of all charges as follows:

90% to be paid latest 5 calendar days after Bill of Lading date against Seller's commercial invoice and usual shipping documents using the Platt's quotation as published on Bill of Lading date or immediately preceding date in case there is no Platt's quotation on B/L date.
Balance payment to be made latest 3 calendar days after the last day of the pricing period against Seller's commercial invoice and shipping documents in case there were no presented for provisional payment.
In the event that the shipping documents are not available by due date, payment to be made against seller's invoice and letter of indemnity (telex acceptable for both), in a form and countersigned by a first class bank both to be acceptable to buyer.

Buyer will open a letter of credit in a format and a first class European bank both acceptable to Seller.

The present Addendum No. 102 is an integral part of the Contract No P-09/3 dated 27 July 2004.
All other terms of the Contract No. P-09/3 dated 27 July 2004 remain unchanged.
The present Addendum No. 102 comes into force from the moment of its signing.

THE SELLER

_____

THE BUYER

Addendum № 103
To the Contract No P-09/3 dated 27 July 2004

Moscow                                                                                          28 September 2007

Company "Progetra S.A" hereinafter referred to as "Sellers" and Messrs "Petraco oil Company Ltd" hereinafter referred to as "Buyers", for the purpose of this Contract both referred to as the "Parties", have agreed following amendment:

For the cargo of ULSD to be shipped during October 05 – December 20, 2007 on m/t "TBN" / sub in several lots consistent with loadings into vessels at Turkmenbashi refinery of about 2 800 to 3 200 mtons each the price should be as follows:

For the quantity 50 000 +/- 10% in Seller's option (about 25 000 mtons to be dispatched from Turkmenbashi refinery in October 2007 and about 25 000 to be dispatched in November 2007) the price should be:

High FOB quotation as published by Platt's European Marketscan for Diesel 50 ppm under the heading FOB (Med) Italy valid for the date immediately following the B/L date of a vessel loading at Turkmenbashi refinery (B/L = 0, reference date = 1) minus a discount of USD 10,50 per metric ton. If there is no publication for the pricing date than immediately following such pricing date Platt's publication to apply.

Above price is based on a density at 15 deg c of 0.8450 and will escalate/de-escalate arithmetically according to actual b/l density at 15 deg c as per bill of lading.

The loading dates should be mutually agreed between the parties.

Quality: French summer diesel with the following specification:

| Property | Units | Limits | | Test method $a$ |
|---|---|---|---|---|
| | | Min | Max | |
| Cetane number $c$ | | 51,0 | | EN ISO 5165 |
| Cetane index | | 46,0 | | EN ISO 4264 |
| Density at 15 deg C $b$ | Kg/m3 | 820 | 845 | EN ISO 3675 |
| | | | | EN ISO 12185 |
| Density at 15 deg C (in air) | Kg/m3 | To be reported | | Calculated |
| Polycyclic aromatic hydrocarbons $d$ $e$ | %(m/m) | | 11 | EN 12916 |
| Sulphur content $b$ | mg/Kg | | 50 | EN ISO 20884 |
| | | | | EN ISO 20884 |
| Flash point | deg C | 60 | | EN 22719 |
| Carbon residue (on 10% distillation residue) $f$ | %(m/m) | | 0,30 | EN ISO 10370 |
| Ash content | %(m/m) | | 0,01 | EN ISO 6245 |
| Water content | mg/Kg | | 200 | ISO 12937 |
| Total contamination | mg/Kg | | 24 | EN 12662 |
| Copper strip corrosion (3h at 50 deg C) | rating | class 1 | | EN ISO 2160 |
| Oxidation stability | g/m3 | | 25 | EN ISO 12205 |
| Lubricity, correct. wear scar diam. (wsd 1.4) at 60 deg C | micron | | 460 | ISO 12156-1 |
| Viscosity at 40 deg C | mm2/s | 2,00 | 4,50 | EN ISO 3104 |
| Distillation $g$ $h$ | | | | EN ISO 3405 |
| recovered at 250 deg C | %(V/V) | | < 65 | |

| | | | | |
|---|---|---|---|---|
| recovered at 350 deg C | %(V/V) | 85 | | |
| 95% (V/V) recovered at | deg C | | 360 | |
| Fatty acid methyl ester (FAME) content *i* | %(V/V) | | 5 | EN 14078 |

| | | | | |
|---|---|---|---|---|
| Appearance | | clear and bright | | ASTM D 4176 |
| Colour | | | 2 | ISO 2049 |
| Conductivity | pS/m | 150 | | ASTM D 2624 |

| Property | Units | Limits | | Test method *a* |
|---|---|---|---|---|
| | | Winter | Summer | |
| | | Min \| Max | Min \| Max | |
| CFPP: | deg C | -15 | 0 | EN 116 |
| Cloud Point | deg C | -5 | 5 | EN 23015 |

Summer : April 1st - September 30 th
Winter : October1st - March 31st

Data ultima modifica 01-lug-04

The cargo could be doped for CFPP and cloud point improvement as well as lubricity and electro conductivity, the cost of services to be split between Buyers and Seller.

Payment:
Payment in USD by telegraphic transfer in immediately available funds, payable at the counters of Seller's bank, without offset, discount or counterclaim and free of all charges 10 (ten) calendar days after Bill of Lading date (B/L date – date zero).

Payment to be made against presentation of seller's commercial invoice and original shipping documents.

In the event that the shipping documents are not available by due date, payment to be made against seller's invoice and letter of indemnity (telex acceptable for both), in a form and countersigned by a first class bank both to be acceptable to buyer.
Buyer will open a documentary letter of credit in favour of buyer.

The buyer shall effect the prepayment of 1 500 000 USD against Seller's invoice. The sum of prepayment to be refunded with last two vessels.

The present Addendum No. 103 is an integral part of the Contract No P-09/3 dated 27 July 2004. All other terms of the Contract No. P-09/3 dated 27 July 2004 remain unchanged.

The present Addendum No. 103 comes into force from the moment of its signing.

THE SELLER

THE BUYER