UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
PETRACO OIL CO. LTD.

                Plaintiff,                      08-cv-03115 (PAC)(THK)

    -against-

PROGETRA S.A.

                Defendant.
-------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF INTERVENOR'S MOTION TO VACATE ORDER OF MARITIME ATTACHMENT

Kavanagh Maloney & Osnato LLP
415 Madison Avenue
New York NY 10017
212.207.8400

*Attorneys for Intervenor
Raiffeisen Zentralbank Österreich A.G.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................ii

FACTUAL BACKGROUND.................................................................................1

ARGUMENT..........................................................................................................3

I.   THIS COURT'S MARCH 31, 2008 EX PARTE
     MARITIME ATTACHMENT ORDER SHOULD BE VACATED...................3

     A.   PLAINTIFF DOES NOT HAVE A
          VALID PRIMA FACIE ADMIRALTY CLAIM............................4

          1.   The Gasoil Contract Is Not a Maritime Contract......................4

          2.   The Relevant Charter Party
               or Bill of Lading Are Not at Issue..........................................6

          3.   Claims Under a Sales Contract That
               A Seller Should Indemnify a Purchaser
               For Demurrage Charges Are Not Maritime Claims...................7

     B.   THE DEFENDANT'S PROPERTY
          IS NOT FOUND IN THIS DISTRICT..........................................8

II.  AFTER VACATUR, THE ATTACHED
     EFT AMOUNTS SHOULD BE PROPERLY DISTRIBUTED .....................9

CONCLUSION.......................................................................................................9

# TABLE OF AUTHORITIES

**Cases**

*Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*,
    460 F.3d 434 (2d Cir. 2006)..................................................................3,4,8

*Aston Agro-Industrial AG v. Star Grain Ltd.*,
    2006 WL 3755156 (S.D.N.Y. 2006).......................................................3,4,5,8

*Dolco Investments, Ltd. v. Moonriver Development, Ltd.*,
    486 F.Supp.2d 261 (S.D.N.Y. 2007)................................................................8

*Folksamerica Reins. Co. v. Clean Water of New York, Inc.*,
    413 F.3d 307 (2d Cir. 2005)............................................................................4

*Norfolk Southern Railway Co. v. Kirby*, 543 U.S. 14 (2004)................................4,7

*Ronda Ship Management Inc. v. Doha Asian
    Games Organizing Comm.*, 511 F.Supp.2d 399 (S.D.N.Y. 2007)..................4,6

*Seamar Shipping Corp. v. Kremikovtzi Trade Ltd.*,
    461 F.Supp.2d 222 (S.D.N.Y. 2006)................................................................8

*Smith v. Gaubert Oil Co. Inc.*, 169 Fed.Appx. 920 (5th Cir. 2006)...........................6

*Tropwood A.G. v. Tae Chang Wood Industry Co.*,
    454 F. Supp. 964 (N.D.Ill. 1978).....................................................................6

*U.S. v. 4492 S. Livonia Rd.*, 889 F.2d 1258 (2d Cir. 1989).......................................4

*Woodcraft Works v. U.S.*, 152 F. Supp. 82 (Ct. Cl. 1957).........................................7

**Other Authorities**

28 U.S.C. § 1333....................................................................................................1,3

Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims........1,3

Rule E of the Supplemental Rules for Certain Admiralty and Maritime Claims........1,4

14A C. Wright & A. Miller, *Federal Practice and Procedure*
    (1998 and Supp. 2008)...................................................................................6

T. Schoenbaum, 1 *Admiralty and Maritime Law* § 3-10 (4th ed. 2008)....................6

New York U.C.C. §§ 4-A-502 and 504......................................................................8

Intervenor, Raiffeisen Zentralbank Österreich ("RZB"), by and through its counsel, Kavanagh Maloney & Osnato LLP, respectfully submits, pursuant to Rule E(4)(f) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure (the "Admiralty Rules"), this Memorandum of Law in support of its Motion to Vacate this Court's March 31, 2008 ex parte order for process of maritime attachment.

As plaintiff Petraco Oil Co. Ltd. ("Petraco") has not alleged a viable maritime claim under 28 U.S.C. § 1333(1) and Admiralty Rules B and E, RZB's motion should be granted and the attachment vacated for lack of subject matter jurisdiction.

In addition, pursuant to Admiralty Rule E(4)(f), RZB respectfully requests that after vacatur, this Court either: (1) order that the original, relevant electronic fund transfer ("EFT") instructions be carried out, or (2) keep all attached sums in its custody until proper ownership can be determined, or (3) issue such other order concerning the EFTs as is just and proper.

## FACTUAL BACKGROUND

On March 27, 2008, Petraco filed its verified complaint (the "Complaint") against the defendant Progetra S.A. ("Progetra") seeking an ex parte order for process of maritime attachment pursuant to Admiralty Rule B. The Complaint alleges that: (1) Petraco, an entity organized and existing under the laws of Italy with a registered office in Guernsey, the Channel Islands, Complaint ¶2, entered into a sale of goods contract pursuant to which Petraco would buy four cargoes of Russian gasoil[1] of 30,000 metric tons each per month (Complaint ¶4) from Switzerland-based Progetra (the "Gasoil

---

[1] "Gasoil" is the term used in Europe to refer to diesel fuel and heating oil. Gasoil futures are traded on the Petroleum Exchange in London.

Contract"); (2) in the course of performance, Progetra incurred "various obligations ... for demurrage and other charges relating to the carriage of goods by sea totaling approximately US $658,168.44," Complaint ¶5; and (3) pursuant to the Gasoil Contract, "any disputes thereunder shall be submitted exclusively to arbitration in London, England." Complaint ¶9.

On March 31, 2008, this Court signed an order authorizing process of maritime attachment and garnishment. Thereafter, the exact date or details of which are not in the record, the total sum of $783,758.08 was attached.[2] Although there are no facts or details concerning the attachment in the record before the Court, the funds appear to have been attached while present in U.S. dollar accounts at intermediary banks in New York, during EFTs.

The Gasoil Contract is attached to the Complaint as Exhibit A. The contract concerns the sale of low-density Russian gasoil. See section 4. The contract is an "F.O.B." contract (see sections 7, 9 and 14), in which the sale from Progetra to Petraco occurs when the gasoil passes through the hose connecting the loading terminal at Novorossiysk, Russia to a ship. See section 14. The only parties to the Gasoil Contract are the buyer (Petraco) of the oil and the seller (Progetra). The Gasoil Contract does not specify which ships will transport the oil away from Novorossiysk, when such ships will load, the dates or routes of transport, or to which ports the future cargoes of oil will actually be shipped.

Pursuant to Section 15, the "contract shall be governed by and construed in accordance with English law (without reference to any conflict of law rules)" and "any

---

[2] At the June 9, 2008 conference with the Court, Plaintiff stated that the entire amount sought in the Complaint had been attached.

disputes hereunder shall be settled within the exclusive jurisdiction of the London arbitration."

On June 6, 2008, RZB intervened and filed an intervening complaint pursuant to Local Admiralty Rule E.2.[3] RZB's intervening complaint contends that of the total amount attached (believed to be the $783,758.08 demanded in the Complaint), a portion of the total amount, namely $502,295.04 (the "RZB amount") was an asset of RZB, and that RZB, not Defendant Progetra, was at all relevant times the legal and beneficial owner of such $502,295.04. Intervening complaint at ¶10.

## ARGUMENT

### I.

### THIS COURT'S MARCH 31, 2008 EX PARTE MARITIME ATTACHMENT ORDER SHOULD BE VACATED

Federal courts have original jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction...." 28 U.S.C. § 1333(1). Rule B attachments are available only "with respect to ... admiralty or maritime claim[s]." Rule B(1). "Absent the requisite admiralty or maritime jurisdiction, a Rule B maritime attachment is void." *Aston Agro-Industrial AG v. Star Grain Ltd.*, 2006 WL 3755156 *2 (S.D.N.Y. 2006).

A district court must vacate a maritime attachment unless the *plaintiff* can establish that:

> 1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment.

*Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445 (2d Cir. 2006).

---

[3] On the signature page of the Gasoil Contract (Complaint at Exhibit A), RZB and BNP Paribas are listed as Progetra's banks.

"Rule E(4)(f) clearly places the burden on the Plaintiff to show that an attachment was properly ordered." *Aqua Stoli*, 460 F.3d at n.5. "The prima facie standard is more stringent than the pleading requirement of the Federal Rules of Civil Procedure." *Ronda Ship Management Inc. v. Doha Asian Games Organizing Comm.*, 511 F.Supp.2d 399, 404 (S.D.N.Y. 2007), *citing U.S. v. 4492 S. Livonia Rd.*, 889 F.2d 1258, 1266 (2d Cir. 1989).

Here, Plaintiff cannot establish the first and third elements of *Aqua Stoli*. Therefore, this Court's March 31, 2008 ex parte order for process of marine attachment should be vacated.

### A.  PLAINTIFF DOES NOT HAVE A VALID PRIMA FACIE ADMIRALTY CLAIM

With respect to *Aqua Stoli*'s first element, Petraco does not have a "valid prima facie admiralty claim" because: (1) the Gasoil Contract is not a maritime contract; (2) the relevant charter party and bill of lading are not in dispute; and (3) claims under a sales contract that a seller should indemnify a purchaser for demurrage charges are not maritime claims.

#### 1.  The Gasoil Contract Is Not a Maritime Contract.

Federal maritime law applies to a breach of contract action only if the "principal objective of [the] contract is maritime commerce." *Norfolk Southern Railway Co. v. Kirby*, 543 U.S. 14, 25 (2004). *See also Folksamerica Reins. Co. v. Clean Water of New York, Inc.*, 413 F.3d 307, 315 (2d Cir. 2005) (quoting and analyzing *Norfolk Southern*).

Here, the "principal objective" of the Gasoil Contract is simply Progetra's sale of gasoil to Petraco. The fact that the parties intended their contract to be a straightforward sale of goods is reflected in the text of their contract. At section 15, entitled "Law and

Jurisdiction," Progetra and Petraco, knowing and intending that their agreement was for the sale of gasoil, agreed that English law would apply and specifically agreed that "[t]he U.N. Convention On Contracts For the International Sale of Goods (1980) Shall Not Apply." This phrase was included since the parties anticipated that, absent such a carve-out, the CISG, which applies to all international sales of goods between signatory countries, would apply. *See e.g.*, the CISG Database at cisg.law.pace.edu/cisg.

Moreover, pursuant to its sections 9 and 10, the Gasoil Contract was an "F.O.B." or "free on board" contract," *i.e.*, it did not apply to the actual shipping of the gasoil, as once the oil entered a ship's intake valve, and well before that ship began to move, the gasoil and all accompanying risk had already passed to Petraco as buyer. As stated in section 14, "Property in the Product, all risks and liabilities with respect thereto shall pass to buyer when the product passes the flange connection between the delivery hose and the permanent hose connection of the vessel at the loading terminal." *See Aston*, supra, at *4 (sale of goods contract where risk passed to buyer at loading port not maritime contract).

The fact that the gasoil *already* sold to Petraco would *thereafter* be transported on an unnamed ship to an unidentified destination, does not make the parties' sales contract a "maritime contract." *Aston, supra* at * 3 (fact that wheat would be transported by ship did not make contract for sale of wheat a maritime contract). Indeed, a finding that the Gasoil Contract is a maritime contract would mean that U.S. courts have subject matter jurisdiction over every worldwide sale of goods if such goods are transported at least in part by ship. *See Tropwood A.G. v. Tae Chang Wood Industry Co.*, 454 F. Supp. 964, 965 (N.D.Ill. 1978) ("contract for the sale of goods is not a maritime contract, even though a portion of its performance is to take place on navigable waters."). *See generally* 14A C.

Wright & A. Miller, *Federal Practice and Procedure* § 3675 (1998 and Supp. 2008) (analyzing the limited kinds of contracts that give rise to federal admiralty jurisdiction).

### 2. The Relevant Charter Party or Bill of Lading Are Not at Issue.

The Gasoil Contract does not involve an actual journey over navigable waters and is not an agreement with a shipper or ship owner. Such a contract is a "charter party" -- a contract by which a ship is let to a merchant for the conveyance of goods on a determined voyage. A charter party is a maritime contract giving rise to jurisdiction under 28 U.S.C. § 1333(1). *Ronda*, *supra*, 511 F.Supp.2d at 404. But the charter party or charter parties, to be signed by Petraco and a ship owner, that actually cover the nautical voyage from Novorossiysk to other ports, is/are *not* the contract(s) before this Court. *See Smith v. Gaubert Oil Co. Inc.*, 169 Fed.Appx. 920, 920 (5th Cir. 2006) (federal maritime law did not apply as delivery of oil by barge merely incidental to contract for sale of oil); *Aston*, *supra* at *3 (charter party is maritime contract but sale of goods agreement is not). *See also* T. Schoenbaum, 1 *Admiralty and Maritime Law* § 3-10 (4th ed. 2008).

A bill of lading can also be a maritime contract for purposes of federal admiralty jurisdiction. *Norfolk Southern*, *supra* 514 U.S. at 25 (bills of lading issued by Australian freight forwarder were "maritime contracts"). But a bill of lading concerning Petraco's Russian gasoil is not before the Court.

### 3. Claims Under a Sales Contract That a Seller Should Indemnify a Purchaser for Demurrage Charges Are Not Maritime Claims.

In the Complaint, Petraco's only allegation that purports to invoke this Court's maritime jurisdiction concerns Petraco's contention that it is owed "demurrage[4] and other charges relating to the carriage of goods at sea totaling approximately US $658,168.44." Complaint at ¶5. However, it is well-settled that claims under a sales contract requiring the seller to indemnify the purchaser for demurrage charges incurred by the purchaser are not maritime claims. *Woodcraft Works v. U.S.*, 152 F. Supp. 82, 83 (Ct. Cl. 1957). Section 11 of the Gasoil Contract, the only portion of the Gasoil Contract mentioning demurrage, merely states that: (1) "Buyer" has 90 days from the bill of lading date to present any demurrage claim "[i]f actually incurred as per charter party rate, terms and conditions," and (2) "Buyer" shall be indemnified for demurrage. Accordingly, the actual determinations concerning demurrage are explicitly governed by the terms of the future contemplated charter parties to be separately signed by Petraco and a ship owner. See section 11.

Under the Gasoil Contract before this Court, Petraco was merely a buyer of oil, and there was nothing inherently "maritime" about the bargain it made with Progetra. In the words of *Norfolk Southern*, "maritime commerce" was not the "principal objective" of the Gasoil Contract. *Norfolk Southern, supra*, 543 U.S. at 25.

---

[4] "Demurrage" is "remuneration of the shipowner for the detention of its vessel beyond the number of days allowed by the charter-party." *Transatlantic Shiffahrtskontor GMBH v. Shanghai Foreign Trade Corp.*, 204 F.3d 384, 386 n.2 (2d Cir. 2000) (citing Black's Law Dictionary (6th ed. 1990)).

**B.  THE DEFENDANT'S PROPERTY
IS NOT FOUND IN THIS DISTRICT**

Not only does this Court lack subject matter jurisdiction over this Russian sale of goods governed by English law, but the attachment should also be vacated because Defendant Progestra's property is not found in this District. Under *Aqua Stoli* and Admiralty Rules B and E, Plaintiff Petraco must establish that the EFT sums attached, including the RZB Amount ($502,295.04), are the assets of Progetra. As alleged in RZB's intervening complaint, RZB believes that Petraco cannot make this required showing. *See Dolco Investments, Ltd. v. Moonriver Development, Ltd.*, 486 F.Supp.2d 261, 269 (S.D.N.Y. 2007) (maritime attachment vacated after plaintiff could not establish that EFT was property of defendant). *See also Seamar Shipping Corp. v. Kremikovtzi Trade Ltd.*, 461 F.Supp.2d 222, 224-26 (S.D.N.Y. 2006) (Rule B maritime attachment of EFT invalid if defendant was intended beneficiary of the EFT and not EFT's originator): N.Y. U.C.C. §§ 4-A-502 and 504 (EFTs property of neither sender nor beneficiary while at New York intermediary banks).

Based on the record currently before the Court, Plaintiff Petraco cannot establish that: (1) the attached EFT or EFTs are the property of Progestra, or (2) that Progestra was the originator of any of the attached EFTs.

Thus, this Court's March 31, 2008 ex parte order for process of marine attachment should be vacated.

## II.

## AFTER VACATUR, THE ATTACHED
## EFT AMOUNTS SHOULD BE PROPERLY DISTRIBUTED

Pursuant to Admiralty Rule E(4)(f), RZB respectfully requests that after vacatur, this Court either: (1) order that the original, relevant EFT instructions be carried out, or (2) keep all attached sums in its custody until proper ownership can be determined, or (3) issue such other order concerning the EFTs as is just and proper.

## CONCLUSION

This Court's March 31, 2008 ex parte order for process of maritime attachment should be vacated, and thereafter the attached EFT amounts properly distributed.

Dated: June 27, 2008

KAVANAGH MALONEY & OSNATO LLP

By: _____
Jorn A. Holl (JH 1119)
415 Madison Avenue, 18th Floor
New York NY 10017
(212) 207-8400
Fax: (212) 888-7324
jholl@kmollp.com

Attorneys for Intervenor RZB