LAW OFFICES OF SIMON HARTER, ESQ.
304 Park Avenue South – 11th Floor
New York, New York 10010
(212) 979-0250 – Phone
(212) 979-0251 – Fax
Attorneys for Plaintiff, PETRACO OIL CO. LTD.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x

PETRACO OIL CO. LTD.,                          :
                                               :
                          Plaintiff,           :        08-CV-03115 (PAC)(THK)
                                               :
        -against-                              :
                                               :
                                               :
PROGETRA SA,                                   :
                                               :
                          Defendant.           :
------------------------------------------------------------x

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION**
**TO DEFENDANT'S MOTION TO VACATE AND DISMISS**
**AND TO INTERVENOR's MOTION TO VACATE**

Plaintiff, PETRACO OIL CO. LTD., by its Attorneys, Law Offices of Simon

Harter, Esq., submits this Memorandum of Law in opposition to: (1) Defendant,

PROGETRA S.A.'s Motion to Vacate the Rule B Attachment Of Plaintiff and Dismiss the

Verified Complaint; and (2) Intervenor, RAIFFEISEN ZENTRALBANK OSTERREICH

A.G.'s, Motion to Vacate Order of Maritime Attachment.

Submitted herewith is the Affirmation of Imogen Jane Rumbold dated

July 10, 2008.

## THE BASIC FACTS

Plaintiff, Petraco Oil Co. Ltd. is a foreign business entity organized and existing under the laws of Italy with a registered office in Guernsey in the Channel Islands. *See Verified Complaint at* ¶ 2.    Defendant, Progetra SA ("Defendant"), is a foreign business entity organized and existing under the laws of Russia, with a registered office at Viale Stefano Franscini 16, CH-6900, Lugano, Switzerland. *Id. at 3.*

On or about June 27, 2004, Plaintiff and Defendant entered into a contract pursuant to which Plaintiff would buy and Defendant would sell four cargoes of gasoil of 30,000 metric tons (five percent more or less) each per month for a total quantity of approximately 1,500,000 metric tons. *Id. at* ¶ 4.  As addressed in detail below, although various provisions of the contract are for the sale of goods, other substantial provisions of the contract concern the allocation of various obligations that are clearly maritime in nature and subject matter.

In the course of performance of the contract, Defendant incurred various obligations for demurrage, shifting expenses, towage charges, mooring charges, port dues and charges and pilotage charges, all of which relate to the carriage of goods by sea, totaling approximately US $658,168.44.   The aforementioned charges, although duly invoiced by Plaintiff, have not been paid by Defendant in breach of the contract. *See Verified Complaint at* ¶¶ 5-7.

Plaintiff therefore sought, and obtained, an Order of Maritime Attachment and Garnishment in the total amount of US $783,758.08, consisting of Plaintiff's principal claim of US $658,168.44, interest of US $90,589.64 and recoverable legal fees

and arbitration costs under English law of US $35,000.00. *See Verified Complaint at ¶¶ 11-15.*

## STANDARD OF REVIEW

Defendant and Intervenor, Raiffeisen Zentralbank Osterreich A.G. ("RZB"),[1] have each moved to vacate Plaintiff's Rule B maritime attachment pursuant to Rule E(4)(f) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Supplemental Admiralty Rules"). Defendant has also moved to dismiss the Verified Complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

a.    <u>Motion to Vacate Attachment</u>

In the Rule E(4)(f) inquiry, a district court must vacate the attachment if the plaintiff fails to demonstrate that it has satisfied the requirements of Rules B and E. *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.,* 460 F.3d 434, 445, 2006 A.M.C. 1872 (2d Cir. 2006).

Rule B requires a plaintiff to "file a verified complaint seeking attachment and an affidavit stating that, to the best of the plaintiff's knowledge, the defendant cannot be found within the judicial district. Fed.R.Civ.P. Supp. R. B(1)." *A.P. Moller-Maersk A/S v. Ocean Express Miami,* 2008 WL 1859497 (S.D.N.Y. 2008).

---

[1]    While we refer to RZB as "Intervenor" herein, there is no indication in the docket in this action that its Motion to Intervene has been granted or that its Intervening Complaint has been filed.

Under Rule E, the "complaint must state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Fed.R.Civ.P.Supp.R. E(2)(a).

In response to a motion to vacate the attachment, the plaintiff must also show that it "(1) has a valid primary facie admiralty claim against the defendant; (2) the defendant cannot be found within the district; (3) the defendant's property may be found within the district; and (4) there is no statutory or maritime law bar to the attachment.". *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445, 2006 A.M.C. 1872 (2d Cir. 2006).

A district court has the discretion to vacate the attachment under "limited grounds", such as when the defendant shows that (1) the defendant is subject to suit in a convenient adjacent district; (2) the plaintiff could obtain *in personam* jurisdiction over the defendant in the district where the plaintiff is located; or (3) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise. *Id.* at 445, 447.

b.    Motion to Dismiss for Lack of Subject Matter Jurisdiction

When considering a motion to dismiss for lack of subject matter jurisdiction, "... a court must accept as true all material factual allegations in the complaint." *Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992). As noted in *Maritime Petroleo E Engenharia Ltda. v. Ocean Rig 1 AS*, 78 F.Supp.2d 162, 163-4 (S.D.N.Y. 1999), "[t]he Court is not confined to the complaint, however. It

may consider evidence outside the pleadings, such as affidavits." At the same time, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it. *Id. quoting Shipping Financial Serv. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1988).

### ARGUMENT

In the following points, Plaintiff responds first to the arguments of Defendant, and then RZB, with the exception, in each case, of the question of subject matter jurisdiction, which Plaintiff addresses in its final point below.

### POINT I

#### CONTRARY TO DEFENDANT'S ASSERTION, DEFENDANT HAS ENTERED A GENERAL APPEARANCE IN THIS ACTION AND HAS THEREBY WAIVED THE RIGHT TO MAKE A RESTRICTED APPEARANCE

In Point I of its *Memorandum of Law in Support of Progetra S.A.'s Motion to Vacate the Rule B Attachment of Plaintiff and Dismiss the Verified Complaint* ("Def. Mem."), Defendant invokes Rule E(8) of the Supplemental Admiralty Rules in claiming to be making a restricted appearance in this action. *See Def. Mem.* at 3.

Well before the filing of its motion and its purported restricted appearance on June 26, 2008, Defendant filed a "Notice of Appearance by Faust Oppenheim LLP on behalf of Progetra SA" in this action on May 12, 2008. *See Docket Entry No. 7.* The Notice of Appearance contains no mention of any restriction on Defendant's appearance, nor does it invoke Rule E(8). The same is true of the two letters counsel for

Defendant addressed to the Court on May 12 and May 21, 2008. *See Docket Entry No. 8.* Moreover, on June 9, 2008, counsel for the parties appeared at a pre-motion conference before this Court and no indication of any restriction on Progetra's appearance was declared.

By virtue of these repeated instances of appearances by Defendant without any indication of restriction or without any invocation of Rule E(8), Defendant has made a general appearance and thereby rendered itself subject to the *in personam* jurisdiction of this Court. *Atkins v. The Disintegrating Co.,* 85 U.S. 272, 298, 1873 WL 15893 23 (1873); *East Asiatic C. Ltd. v. Indomar Ltd.,* 422 F.Supp. 1335, 1342 n. 4, 1976 A.M.C. 2039 (S.D.N.Y. 1976).

## POINT II

### DEFENDANT IS IN ERROR IN CONTENDING THAT ABSENT SERVICE OF PROCESS IN SWITZERLAND, PLAINTIFF'S RULE B ATTACHMENT SHOULD BE VACATED AND PLAINTIFF'S VERIFIED COMPLAINT SHOULD BE DISMISSED

The relevant procedural requirements for maritime attachment and garnishment are found in Rule B and E of the Supplemental Admiralty Rules.

The use of the process of attachment in connection with maritime claims "has prevailed during a period extending as far back as the authentic history of those tribunals can be traced." *Atkins v. The Disintegrating Co.,* 85 U.S. 272, 303 (1873). The traditional maritime practice of attaching the assets of a party is codified in Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims. T. Schoenbaum, *Admiralty and Maritime Law* §21-2 (4th ed. 2004); *see also A.P. Moller-Maersk A/S v. Ocean*

*Express Miami*, 2008 WL 1859497 *4 (S.D.N.Y. 2008).  Maritime attachment "… serves both to obtain jurisdiction over a defendant through her assets and to assure satisfaction of the claim." Schoenbaum, *supra* at §21.2.

In this action, Plaintiff filed a Verified Complaint meeting the requirements of Rule B(1)(a) and Rule E(2)(a).  On the basis of these submissions, Process of Maritime Attachment and Garnishment ("PMAG") was issued by the Clerk of Court on April 1, 2008 in accordance with the Order of this Court entered on the same date. *See ECF Docket Entries 4 and 5.*

The PMAG and the Court's Order, were thereafter served on, *inter alia*, JPMorgan Chase Bank and, on April 15, 2008, counsel for the bank gave written notification to Plaintiff's counsel that, "[p]ursuant to a writ of maritime attachment served by you on behalf of Petraco Oil Co. Ltd. on JPMorgan Chase, funds in the amount of $502,295.04, being wire transferred through the Bank to Progetra S.A., were restrained on April 15, 2008." *See Rawle & Henderson letter, dated April 15, 2008, attached hereto as Exhibit "A".*

Following receipt of this notice from counsel for JPMorgan Chase Bank, undersigned counsel gave notice to Progetra as required by Local Admiralty Rule B.2 of this Court.  Plaintiff thus complied, in all respects, with the procedural requirements for maritime attachment and garnishment.

As addressed more fully in Point IV below, even if this Court grants the pending motions and vacates Plaintiff's maritime attachment, subject matter jurisdiction also lies before this Court on the basis of federal question jurisdiction within the

meaning of 28 U.S.C. §1333 by virtue of the applicability of the Section 8 of the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, and the Convention on the Recognition of Foreign Arbitral Awards, 9 U.SC. § 201 *et seq.* *See Verified Complaint* at ¶1 and Point C at p. 5.

The Notice of Appearance filed by Defendant, as discussed in Point I above, states that Defendant's counsel "… hereby requests that all pleadings of any kind including, without limitation, notices, motions, complaints, and orders … and all other papers served or required to be served in this case, be given to and served upon Faust Oppenheum LLP" at its New York office. *See Docket Entry 7.* On June 23, 2008, undersigned counsel served Summons and the Verified Complaint upon Defendant's counsel pursuant to the Notice of Appearance. *See Law Offices of Simon Harter, Esq. letter, dated June 23, 2008 and return receipt, attached hereto as Exhibit "B".*

By these acts, Plaintiff has properly effected service of process upon Defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure. Morever, the instant motion to dismiss filed by Defendant is based solely upon Rule 12(b)(1) for lack of subject matter jurisdiction. In view of the provisions of Rule 12(g)(2), Defendant has waived any right to assert insufficient process under Rule 12(b)(4) or insufficient service of process under Rule 12(b)(5). *See* Fed.R.Civ.P. 12(g)(2).

## POINT III

## CONTRARY TO DEFENDANT'S CONTENTION, THE ENGLISH LAW AND LONDON ARBITRATION CLAUSES IN THE CONTRACT DO NOT INVALIDATE PLAINTIFF'S ATTACHMENT, NOR DO THEY PRECLUDE THE EXERCISE OF JURISDICTION BY THIS COURT

Defendant's claim that the English law and London arbitration clauses in the contract deprive Plaintiff of the right to pursue a Rule B attachment, or this Court of jurisdiction, is simply incorrect. Section 8 of the Federal Arbitration Act, 9 U.S.C. §1 *et seq.* provides as follows:

> If the basis of jurisdiction be a cause of action otherwise justiciable in admiralty, then, notwithstanding anything herein to the contrary, the party claiming to be aggrieved may begin his proceeding hereunder by libel and seizure of the vessel or other property of the other party according to the usual course of admiralty proceedings, and the court shall then have jurisdiction to direct the parties to proceed with the arbitration and shall retain jurisdiction to enter its decree upon the award.

Under Section 8 of the FAA, the plaintiff "… may attach other property belonging to the defendant, and proceed to arbitration." *Tide Line v. Eastrade Commodities, Inc.,* 2007 A.M.C. 252, 272 (S.D.N.Y. 2006).

The mechanism provided under Section 8 of the Federal Arbitration Act has long been held to be available in cases, like this one, involving foreign arbitration governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. §201 *et seq. See Mediterranea di Navigazione SpA v. Int'l Petrochemical Group,* 2007 WL 1434985, 2007 A.M.C. 1748 * 4-6   (S.D.N.Y. 2007); *Sea Transport Contractors, Ltd. v. Industries Chemiques Du Senegal,* 411 F.Supp.2d 386, 395-6, 2006

A.M.C. 1076 (S.D.N.Y. 2006); *see also Result Shipping Co. Ltd. v. Ferruzzi Trading USA Inc.*, 56 F.3d 394, 402, 1995 A.M.C. 2446 (2d Cir. 1995); *Polar Shipping Ltd. v. Oriental Shipping Corp.*, 680 F.2d 627, 1982 A.M.C. 2330 (9th Cir. 1982); *Andros Compania Maritima, S.A. v. Andre & Cie, S.A.*, 430 F.Supp. 88 (S.D.N.Y. 1977).

The fact that the foreign arbitration proceeding may have already commenced does not preclude resort to a Rule B attachment pursuant to Section 8. *West of England Ship Ownes Mut. Ins. Ass'n (Luxembourg) v. McAllister Bros.*, 829 F.Supp. 125 (E.D. Pa. 1993). An attachment pursuant to Rule B is also permissible when the plaintiff's primary purpose is to obtain security for its claims, rather than to obtain jurisdiction over the defendant. *Staronset Shipping Ltd. v. North Star Navigation Inc.*, 659 F.Supp. 189, 190-1, 1987 A.M.C. 1932 (S.D.N.Y. 1987).

## POINT IV

### DEFENDANT HAS SIGNIFICANTLY MISSTATED THE SCOPE OF THE CONVENTION ON THE RECOGNITION AND ENFORCEMENT OF FOREIGN ARBITRATION AWARDS IN ASSERTING THAT THERE IS NO FEDERAL QUESTION JURISDICTION IN THIS CASE

In recognition of the fact that Plaintiff has premised subject matter jurisdiction not only on maritime jurisdiction but also federal question jurisdiction, Defendant disputes the latter ground by making the audacious claim that "[t]he Convention, a treaty, only applies to enforcing arbitration <u>awards</u>, not threatened, but yet to be commenced arbitration." *See Def. Mem.* at 12 (emphasis in original).

Article II(3) of the Convention provides:

> The court of a contracting State, when seized of an action in a matter in respect of which the parties have made an agreement within the meaning of this article, shall, at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative or incapable of being performed. *See 9 U.S.C. § 201 et seq.*

In addition, the enabling legislation for the Convention provides at 9 U.S.C. §206, in a section entitled "Order to compel arbitration, appointment of arbitrators", as follows:

> A court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States. Such court may also appoint arbitrators in accordance with the provisions of the agreement. *9 U.S.C. §206.*

In its Verified Complaint, Plaintiff specifically prayed at Point C, "[t]hat this Court retain jurisdiction over the matter for any further or supplemental proceedings as may be necessary in order to give effect to the London arbitration. *See Verified Complaint*, Point C at p. 5. Given Defendant's rejection of Plaintiff's efforts to commence arbitration proceedings, as detailed in the Affirmation of Imogen Rumbold, submitted herewith, recourse to this Court pursuant to the Convention may very well be required. *See Rumbold Affirmation* at ¶ 11.

- 11 -

## POINT V

### DEFENDANT'S CLAIM FOR COSTS AND ATTORNEY'S FEES FOR ALLEGED WRONGFUL ATTACHMENT IS ENTIRELY WITHOUT FACTUAL OR LEGAL FOUNDATION

A claim for wrongful attachment can only be premised on clear evidence of "bad faith, malice, or gross negligence". _Result Shipping Co. Ltd. v. Ferruzzi Trading USA Inc._, 56 F.3d 394, 401-2, 1995 A.M.C. 2446 (2d Cir. 1995) (citations omitted); _see also OGI Oceangate Transportation Co. Ltd. v. RP Logistics Pvt. Ltd._, 2007 WL 2900225 *3 n. 3 (S.D.N.Y. 2007); _Dolco Investment Ltd. v. Moonriver Development, Ltd._, 526 F.Supp.451, 453-4 (S.D.N.Y. 2007).

There is no such allegation by Defendant, nor can one be made within the confines of Rule 11 of the Federal Rules of Civil Procedure.


### POINT VI

### INTERVENOR RZB HAS FAILED TO DEMONSTRATE THAT IT HAS STANDING TO MOVE TO VACATE PLAINTIFF'S RULE B ATTACHMENT

The motion papers submitted by RZB consist solely of a Notice of Motion and a Memorandum of Law In Support of Intervenor's Motion to Vacate Order of Maritime Attachment ("_RZB Mem._"). _See ECF Docket at Entries 16-17_. RZB has not presented an affidavit or affirmation from anyone from RZB with personal knowledge of the facts and circumstances upon which its claims and arguments are based. Nor has RZB submitted any of the documentation which it alleges give it property rights in

the funds under attachment.    In the entire record of this case, the only suggestion of a basis for standing on the part of RZB are the allegations contained in its Motion to Intervene and its proposed Intervening Complaint, neither of which are verified by an official of RZB.

Paragraph 6 (b) of RZB's Motion to Intervene alleges that the electronic funds transfer attached by Plaintiff concerned a January 23, 2008 contract for the purchase of diesel fuel between Vitol and Progetra, yet that contract has not been provided, nor has any affidavit or affirmation testimony been given in regard to the contract.    More importantly, RZB claims in paragraph 6(c) of its Motion to Intervene that pursuant to an assignment contract dated January 4, 2007, Defendant assigned to RZB all of its rights and receivables under sales contracts financed by RZB.  RZB has not produced this assignment contract, which is the singular basis of its alleged interest in the attached funds, nor has it offered any affidavit or affirmation testimony from anyone at RZB regarding the assignment.

Not only has RZB failed to support its claim of an interest in the attached funds, but by failing to produce any testamentary and documentary evidence of the alleged assignment upon which its allegations are founded, it has also failed to give any indication of the law governing the assignment, or to establish that the purported assignment is valid and enforceable under the applicable law.

In _Egyptian Navigation Co. v. Baker Investments Corp.,_ 2008 WL 1748456 (S.D.N.Y. 2008), a non-party to the action moved to vacate a maritime attachment of an electronic funds transfer on the basis of its claim that the defendant has assigned the

transferred funds to the third party prior to the transfer.   In the parties' respective motion papers, both the plaintiff and the third party submitted expert affidavits from English solicitors who each addressed the issue of the validity of the assignment under English law which governed the transaction.   In determining that the attached funds were the property of the third party and not the defendant, Judge Stein made an extensive analysis of the requirements for both statutory and equitable assignment under English law.

In this case, there has been no evidence of the purported assignment.  Nor has there been any showing that the purported assignment is valid or under what law the validity of the assignment is to be assessed.   It is also possible that even if the assignment is otherwise valid, it may be unenforceable on some statutory or other legal basis.  *See e.g. Auroro Maritime v. Abdullah Fahem & Co.*, 85 F.3d 44, 1996 A.M.C. 1755 (2d Cir. 1996) (state law set-off rights in favor of bank are not enforceable against a Rule B maritime attachment).

What is before this Court, however, are allegations and documentation that stand in direct contradiction to RZB's allegations of ownership in the attached funds.   First and foremost is the fact that the Defendant, having purportedly assigned all of its right, title and interest in the attached funds has: (1) retained counsel to appear in this action, (2) invoked (albeit belatedly) Rule E(8) of the Supplemental Admiralty Rules in claiming ownership to the funds, (3) referred repeatedly in its own motion to vacate the attachment to the funds as being "Defendant's funds"; (4) and sought legal fees and costs from Plaintiff for wrongful attachment.

- 14 -

Second, and also of significance, is RZB's allegation that the attached funds were a "payment made by DZ Bank directly to RZB at RZB's account at JPMorgan Chase". *See Motion to Intervene* at ¶ 6(a) and *Intervening Complaint* at ¶ 6. This assertion by RZB is directly contrary to the notice of attachment provided by JPMorgan Chase's counsel, dated April 15, 2008, which states that the funds attached by Plaintiff in this case awere "… being wire transferred through the Bank to Progetra S.A. …." *See Exhibit "A" hereto.*

Morever, even if RZB had a property interest in the attached funds, in order for the attachment to be vacated, RZB's interest would have to be absolute and exclusive.    As the court stated in *Essar Int'l Ltd. v. Martrade Gulf Logistics, FZCO*, 2007 WL 2456629 * 2-3 (S.D.N.Y. 2007):

> The Second Circuit has stated that the definition of "property" under Rule B is broad. *Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 263, 275 (2d Cir.2002) ("It is difficult to imagine words more inclusive than 'tangible or intangible' …. The phrase is the secular equivalent of the creed's reference to the maker 'of all there is, seen and unseen.' "). Thus, attachable property under Rule B includes debts owed to a defendant, "even if they have not yet matured or have only partially matured," as well as electronic funds in the possession of an intermediary bank en route to a defendant recipient. *Winter Storm*, 310 F.3d at 276-78. Under Rule B, it is also possible for more than one party to have an interest in the same property. For example, the sender and recipient of an EFT may have "overlapping property rights," rendering the EFT attachable under Rule B if either party is a named defendant. *HBC Hamburg Bulk Carriers GMBH & Co. KG v. Proteinas y Oleicos S.A. de C.V.*, No. 04 Civ. 6884(NRB), 2005 WL 1036127, at *4 (S.D.N.Y. May 4, 2005).

There are numerous instances in which attachments have been upheld even when a non-party also has an interest in the attached funds. *See Vamvaship Maritime Ltd. v. Shivnath Rai Harnarain (India) Ltd.*, 2006 WL 1030227 (S.D.N.Y. 2006); *Dominion Bulk International, S.A. v. Naviera Panoceanica, S.A.C.*, 2006 WL 3408799 (S.D.N.Y. 2006); *see also Western Bulk Carriers (Australia), Pty. Ltd. v. P.S. Intern., Ltd*. 762 F.Supp. 1302, 1307, 1991 A.M.C. 2828 (S.D. Ohio 1991) ("However, the Court finds nothing in Rule B, or in the *Union Planters* [*Nat'l Bank v. World Energy Systems Assocs.*, 816 F.2d 1092, 1098 (6th Cir.1987)] case cited by defendant, which would per se prevent an attachment of property simply because the property is subject to an arguably superior secured interest. Indeed, cases have upheld the validity of an attachment even where the property is in the custody of the United States Marshal under an earlier writ of attachment. *See,* e.g., *Olaf Pedersen's Rederi, A/S of Oslo v. Philippine Merchants Steamship Co.*, 238 F.Supp. 885 (D.Haw.1965). Furthermore, defendant has cited to no Ohio law which generally would preclude attachment of property already subject to a perfected security interest, and even if such state law existed, there is some question whether maritime attachment under Rule B could be so precluded. *See Tonder v. M/V The "Burkholder"*, 630 F.Supp. 691, 694 (D.V.I.1986) (Virgin Islands' statute exempting property of College of the Virgin Islands from judicial process, including attachment, would not preclude attachment of such property under admiralty law). For these reasons, the Court finds that the funds in defendant's account at BancOhio are "goods and chattels, or credits and effects" subject to attachment proceedings under Rule B").

In light of RZB's failure to provide any evidence, in testamentary or documentary form, establishing its interest in the property or the validity of the assignment on which its alleged interest is based, RZB's motion to vacate should be denied.[2]

## POINT VII

### PLAINTIFF IS ENTITLED TO DISCOVERY BEFORE ANY CLAIM OF OWNERSHIP BY RZB CAN PROPERLY BE CONSIDERED

In the event RZB attempts to correct, in its reply submission, the above-noted deficiencies in its original motion papers, Petraco will be deprived of the opportunity to respond to any such documents, affidavit testimony or expert opinions.

Therefore, in the event that the Court does not consider RZB's failure to establish its interest in the attached funds sufficient, by itself, to warrant dismissal of RZB's motion, Plaintiff respectfully requests that before the Court rules on the merits of RZB's motion, Plaintiff be allowed a reasonable period to conduct discovery regarding the terms and conditions of the purported assignment, the circumstances surrounding the alleged giving of the assignment and the actions, if any, taken by RZB to enforce its

---

[2]    RZB's alternative ground for vacating the attachment – that Progetra was the intended beneficiary rather than the initiator – is based on *Seamar Shipping COr. V. Kremikovtzi Trade Ltd.*, 461 F.Supp.2d 222 (S.D.N.Y. 2006).   However, as noted in *Compania Sudamericana de Vapores S.A. v. Sinochem Tianjin Co.*, 2007 WL 1002265 * 4, 2007 A.M.C. 1467 (S.D.N.Y. 2007), "With the exception of Judge Rakoff's decision in *Seamar Shipping Corp. v. Kremikovtzi Trade Ltd.*, 461 F.Supp.2d 222 (S.D.N.Y. 2006), every other decision in this District has held that "defendants who are beneficiaries of an EFT in the hands of intermediary banks have a sufficient property interest for attachment under Rule B(1)(a)."  (citations omitted).

rights under the assignment. *See Hawknet Ltd. v. Overseas Shipping Agencies*, 2008 WL 1944817 * 5 (S.D.N.Y. 2008); *Novoship (UK) Limited v. Ruperti*, 2008 WL 2519912 * 3 (S.D.N.Y. 2008); *see also Maryland Tuna Corp. v. The MS Benares*, 429 F.2d 307 (2d Cir. 1970); *Rolls Royce Industrial Power (India) v. M.V. Frantzis M. Stratilatis Navigation Ltd.*, 1995 WL 314635, 1996 A.M.C. 390 (S.D.N.Y. 1995).

## POINT VIII

### PLAINTIFF'S CLAIMS FALL WITHIN THE ADMIRALTY AND MARITIME JURISDICTION OF THIS COURT AND PLAINTIFF IS THEREFORE ENTITLED TO MAINTAIN ITS RULE B MARITIME ATTACHMENT

We come to the final and most significant issue before the Court: whether Plaintiff's claims lie within the admiralty and maritime jurisdiction of this Court and thus afford Plaintiff the right to maintain its Rule B maritime attachment.

Plaintiff's claims are based on the contract between Plaintiff and Defendant, Contract No. P-09/3, dated June 27, 2007, which is attached, along with certain amendments, to the Verified Complaint as Exhibit "A", and to the Rumbold Affirmation, submitted herewith, at Exhibits A through C.

As the United States Supreme Court noted in *Kossick v. United Fruit Co.*, 365 U.S. 731, 735 (1961), "[t]he boundaries of admiralty jurisdiction over contracts – as opposed to torts or crimes – being conceptual rather than spatial, have always been difficult to draw." The test for determining whether a particular contract falls within the maritime jurisdiction of the federal courts has undergone various changes over the years, with the most recent pronouncement being the Supreme Court's declaration in *Norfolk Southern Ry. v. James N. Kirby, Pty. Ltd.*, 543 U.S. 14, 24, 125 S.Ct. 385 (2004) that

- 18 -

"[i]n an action premised on a maritime contract, the applicability of admiralty jurisdiction is determined by "the nature and subject matter of the contract, and the true criterion is whether it has reference to maritime service of maritime transactions." Yet even in rendering this standard, the Supreme Court acknowledged that "[o]ur cases do not draw clean lines between maritime and non-maritime contracts." *Id.* at 23.

The contract between Plaintiff and Defendant is neither wholly maritime nor entirely land-bound. It is therefore considered a "mixed" contract, and while mixed contracts formerly were held to fall outside admiralty jurisdiction, courts recognize two exceptions to this rule. *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 109 (2d Cir. 1997). The first exception, upon which Plainitff relies in this case, allows the court to exercise admiralty jurisdiction over a mixed contract if "… the claim arises from a breach of maritime obligations that are severable from the non-maritime obligations of the contract." *Folksamerica Reinsurance Co. v. Clean Water of New York, Inc.*, 413 F.3d 307, 314, 2005 A.M.C. 1747 (2d Cir. 2006), *citing, Hartford Fire Ins. C. v. Orient Overseas Containers Lines (UK) Ltd.*, 230 F.3d 549, 555 (2d Cir. 1927. This exception was articulated by Judge Learned Hand in *Compagnie Francaise de Navigation a Vapeur v. Bonnasse*, 19 F.2d 777, 779 (2d Cir. 1927), as follows:

> [I]n so far as the maritime obligations [of a contract] may …
> be separately adjudicated, there is no objection to the
> jurisdiction of the admiralty pro tanto. This is clearly
> intimated in *Turner v. Beacham*, Fed. Cas. No. 14,252, and *The
> Pennsylvania*, 154 F. 9 (C.C.A. 2), though the decisions did
> not require such a holding. The mere fact that the contract
> covers a subject-matter of both kinds is not therefore
> decisive; that would make the mere form control. The

substantial question is whether the maritime obligations can
be separately enforced without prejudice to the rest.

The second exception applies when the non-maritime aspects of the
contract are "merely incidental" to the maritime aspects, Folksamerica, 413 F.3d at 314,
although this latter exception was criticized by the Supreme Court in *Kirby*. 543 U.S at
394. In seeking to vacate the attachment, Defendant and RZB seek to minimize the
maritime aspects of the contract, as if to suggest, by flipping the second exception on its
head, that the maritime aspects of the contract are "merely incidental" to the sales
terms. RZB suggests, for example, that in light of the F.O.B. (Free On Board) term in
the contract, "it did not apply to the actual shipping of the gasoil, as once the oil entered
the ship's intake valve, and well before that ship began to move, the gasoil and all of the
accompanying risk had already passed to Petraco as buyer." *RZB Mem.* at 5. In
support of this assertion, RZB cites American cases.

However, as RZB also acknowledges, the contract is subject to English
law. *Id.* In determining whether a valid maritime claim has been asserted for the
purposes of deciding a motion to vacate a Rule B attachment, courts are to consider the
law chosen by the parties to govern that contract. *Padre Shipping, Inc. v. Yong He
Shipping*, 2008 WL 1869212 *5 (S.D.N.Y. 2008). The Affirmation of Imogen Rumbold,
submitted herewith, indicates that under English law, an FOB contract is a "flexible
instrument" and that, in this case,

> … this Contract makes it clear that the [Plaintiff's]
> obligations continue under this FOB Contract after the vessel
> has completed loading and at least up until the time that

- 20 -

hoses are disconnected. Whilst it may indeed be the case that title will have passed once the cargo passes over the ship's flange, the obligations to pay demurrage will not have been extinguished by the mere fact that cargo has been loaded on board a vessel, the title to which has passed to Petraco as the Buyer." Rumbold Affirmation at ¶ 10.

RZB relies upon two cases for its position that a claim for demurrage based on a sales contract does not fall within admiralty jurisdiction. The first is the holding in _Woodcraft Works v. U.S._, 152 F.Supp. 82, 83 (Ct. Cl. 1957) ("However, it is well settled that claims under a sales contract requiring the seller to indemnify the purchaser for demurrage charges incurred by the purchaser are not maritime claims."). If mere vintage is the litmus-test, we are content to respond by citing to _Klosters Rederi Aktieselskab v. Amtorg Trading Corp._, 7 F.Supp. 727 (S.D.N.Y. 1934), in which the court held that "[t]his maritime obligation [to pay demurrage] contained in the contract of sale can be enforced in admiralty." (citations omitted).

Since, however, RZB also cites _Aston Agro-Industrial AG v. Star Grain Ltd._, 2006 WL 3755156 (S.D.N.Y. 2006), we note that in _Aston_, the contract merely provided that demurrage was payable in accordance with the underlying charter party and, thus, the contract did not contain any provisions for the actual performance of any maritime obligations.

By contrast, the contract here contains several maritime obligations which are entirely severable from the non-maritime obligations pertaining to the sale of goods. Under Clause 6, Petraco is obligated to nominate the carrying vessel to Progetra SA. Significantly, Progetra SA is obligated for "clearance stem with loading terminal."

Petraco is responsible to reimburse Progetra SA in the event late arrival of the carrying vessel causes rail congestion.

Clause 7 of the contract, entitled "DELIVERY/PERIOD", obligates the Defendant to provide one safe, accessible port/one sale accessible berth at the Kombinat Importpischeprom Terminal in Novorossiysk, Russia for the loading of the cargo basis FOB Novorrosiysk upon vessels nominated by Plaintiff. The clause also requires Plaintiff to provide Defendant with a ten-day loading window by the 26th day of each preceding delivery, which Defendant will narrow down to a two-day window by the end of that month. This clause is the basis for claims for shifting expenses, towage and mooring charges, port dues and charges, and pilotage charges, which are all clearly maritime in nature.

Clause 11, entitled "Laytime and Demurrage" does not merely incorporate the provisions of the charter party for the carrying vessel, but also mandates certain performance characteristics for the vessel nominated to carry the subject cargo, provides for allowed laytime at certain percentages in relation to the charter party contract applicable to the carrying vessel, requires that specified notice be given by the Master of the vessel in advance of the vessel's arrival of the loadport, allocates responsibility for delays in berthing, and set out various terms involving the Defendant's liability for demurrage incurred by Plaintiff. _Id._ at Clause 11.

Not only is the _Aston Agro-Industrial AG_ case therefore factuall distinguishable, but Petraco's entitlement to a Rule B attachment is also fully supported by the recent decision in _Centramet Trading S.A. v. Egyptian American Steel Rolling Co.,_ 07-

Civ-6379 (RMB) (S.D.N.Y., Sept. 28, 2007) (copy attached hereto as Exhibit "C").    In

*Centramet*, the defendant moved to vacate a Rule B attachment. In denying the motion

to vacate, the court made the following pronouncement:

> Defendant argues that the only contract to which Defendant
> EASROC is a party is a sale and purchase contract and any
> alleged breach of that contract-even with respect to the
> payment of demurrage-does not give rise to maritime
> jurisdiction. Plaintiff argues that while the agreement
> provides for the sale of steel scrap . . . it has a significant
> maritime component . . . that . . . requires Defendant to pay
> demurrage 'per the Charter Party covering the respective
> voyage. Demurrage claims clearly fall within the court's
> admiralty jurisdiction." Plaintiffs claim that Defendant
> breached its obligation to pay demurrage, a "maritime
> obligation . . . severable from the non-maritime obligations
> of the contract," allows the Court to exercise admiralty
> jurisdiction. The contract specifically obliges Defendant to
> compensate Plaintiff for demurrage owed to the vessel.

Plaintiff respectfully requests that this Court deny the motions of

Defendant and RZB to vacate the attachment on subject matter jurisdiction grounds.

## CONCLUSION

**FOR THE FOREGOING REASON, PLAINTIFF RESPECTFULLY
REQUESTS THATTHIS HONORABLE COURT DENY DEFENDANT
PROGETRA S.A.'s MOTION TO VACATE ATTACHMENT AND DISMISS
COMPLAINT AND DENY PENDING INTERVENOR RZB's MOTION TO VACATE**

Dated:   July 11, 2008

Respectfully submitted,

**LAW OFFICES OF SIMON HARTER, ESQ.**
Attorneys for Plaintiff, PETRACO OIL CO.
LTD.

By: _____

Simon Harter (SH-8540)
304 Park Avenue South – 11th Floor
New York, New York 10010
(212) 979-0250 (Phone)
(212) 979-0251 (Fax)

# EXHIBIT "A"

# RAWLE & HENDERSON LLP



THE NATION'S OLDEST LAW OFFICES
ESTABLISHED 1783

www.rawle.com

CARL D. BUCHHOLZ, III
215-575-4235
CBUCHHOLZ@RAWLE.COM

KENNETH R. MANYIN
215-575-4216
KMANYIN@RAWLE.COM

THE WIDENER BUILDING
ONE SOUTH PENN SQUARE
PHILADELPHIA, PA 19107

TELEPHONE:(215) 575-4200
FACSIMILE:(215) 563-2583

April 15, 2008

**Via Email: gweathers@harterlaw.com**
Gerald Weathers, Esquire
Law Office of Simon Harter, Esq.
304 Park Avenue South, 11th Floor
New York, NY  10010

> Re:  **Petraco Oil Co. Ltd. v. Progetra SA**
>      **Docket No.:  SDNY 08-3115**
>      **Our File No.: 444,218-630**

Dear Mr. Weathers:

Pursuant to a writ of maritime attachment served by you on behalf of Petraco Oil Co. Ltd. on JPMorgan Chase, funds in the amounts of $502,295.04, being wire transferred through the Bank to Progetra S.A., were restrained on April 15, 2008.

Pursuant to Local Admiralty Rule B.2 of the Local Rules of Civil Procedure of the United States District Court for the Southern District of New York, please notify defendant of the restraint of these funds and provide the undersigned with confirmation of the notification.

If you have any additional questions regarding the restrained funds, please give me a call.

Very truly yours,

RAWLE & HENDERSON LLP

By:   Carl D. Buchholz, III
      Kenneth R. Manyin

CDB/KRM/sam
cc:   Mr. Norberto B. Bonga – **Via Email**:  Norberto.B.Bonga@jpmchase.com
      Ms. Johnette Reid – **Via Email**:  Johnette.Reid@jpmchase.com
      Teresa Goldberg, Esquire – **Via Email**: teresa.j.goldberg@chase.com

2377640-1

# EXHIBIT "B"

Law Offices of
# SIMON HARTER, Esq.
sharter@harterlaw.com

304 Park Avenue South – 11th Floor                    20 Nassau Street – Suite 10
New York, New York 10010                              Princeton, New Jersey 08542
Tel:  (212) 979-0250                                          Tel: (609) 688-8330
Fax: (212) 979-0251                                          Fax: (609) 688-8331


June 23, 2008


_Via First Class Mail – Certified Return Receipt_

David I. Faust, Esq.
Faust Oppenheim LLP
488 Madison Avenue, 17th Floor
New York, New York 10022

      Re:     Petraco Oil Co. Ltd. v. Progetra S.A.
              United States District Court – Southern District of New York
              Case No.:  08-cv-03115 (PAC)(THK)

Dear Mr. Faust:

        Pursuant to the Notice of Appearance on behalf of Defendant, Progetra
S.A., filed by your firm on May 12, 2008, we hereby serve you with the enclosed
Summons and Verified Complaint in the above action

        Please note that Progetra, S.A. has thirty-five (35) days from the date of
your receipt of this correspondence to file its answer or other responsive pleading.

        Also enclosed are courtesy copies of the Individual Practice Rules for
Judge Crotty and Magistrate Judge Katz.

        Thank you for your courtesies in the matter.

                    Very truly yours,

                    Simon Harter

June 23, 2008
Page 2

cc:    Jorn A. Hall, Esq.
        Kavanagh Maloney & Osnato LLP
        415 Madison Avenue
        New York, New York 10017
        (w/ enclosures)



**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

**OFFICIAL USE**

| | | |
|---|---|---|
| Postage | $ | $1.00 |
| Certified Fee | | $2.70 |
| Return Receipt Fee (Endorsement Required) | | $2.15 |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 |
| Total Postage & Fees | $ | $5.75 |

Postmark Here

06/23/2008

Sent To  David I. Faust, Esq.

Street, Apt. No.; or PO Box No.  488 Madison Ave., 17th Floor

City, State, ZIP+4  New York, NY 10022

PS Form 3800, August 2006                    See Reverse for Instructions

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

David I. Faust, Esq.
Faust Oppenheim, LLP
488 Madison Avenue, 17th Floor
New York, New York 10022

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Certified Mail    ☐ Express Mail
☐ Registered    ☐ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2.

P.

102595-02-M-1540

EXHIBIT "C"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CENTRAMET TRADING S.A.,                        :
                                               :
                        Plaintiff,             :
                                               :          07 Civ. 6379 (RMB)
          -against-                            :
                                               :          **ORDER**
EGYPTIAN AMERICAN STEEL ROLLING                :
COMPANY,                                        :
                                               :
                        Defendant.             :
------------------------------------------------------------X

## I.    Background

On or about July 12, 2007, Centramet Trading S.A. ("Plaintiff") filed a complaint

("Complaint") against Egyptian American Steel Rolling Company ("EASROC" or "Defendant"),

alleging that Defendant's breach of a voyage charter agreement ("Voyage Charter"), dated June

16, 2006, led to demurrage and other damages totaling $446,229. (Complaint at 2-4.) On that

same day, the Court ordered that process of maritime attachment be issued pursuant to Rule B of

the Supplemental Rules of Certain Admiralty and Maritime Claims of the Federal Rules of Civil

Procedure ("Rule B"). (See Order dated July 12, 2007.)

On or about September 5, 2007, Defendant submitted a Motion to Vacate the Maritime

Attachment ("Motion to Vacate") pursuant to Rule E of the Supplemental Rules ("Rule E"),

arguing, among other things, that (1) "[t]he relevant underlying contract in this action . . . is not

maritime in nature . . . and does not give rise to maritime [and federal] jurisdiction" and (2)

"Centramet's entire application . . . is frivolous" and "riddled with . . . fatal flaws." (Def. Mem.

at 8, 12.)

On or about September 18, 2007, Plaintiff opposed Defendant's Motion to Vacate,

arguing, among other things, that (1) "demurrage is unquestionably a maritime issue" and (2)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9\28\2007

"the attachment is supported by the facts and the merits should be heard in [a pending London] arbitration." (Pl. Mem. at 13–14, 19.)

On September 27, 2007, the Court held a post-attachment hearing pursuant to Rule E. (See Hearing Transcript, Sept. 27, 2007.)

**For the reasons stated below, Defendant's Motion to Vacate is denied.**

## II.    Legal Standard

Rule B is "a relatively broad maritime attachment rule, under which the attachment is quite easily obtained," and a maritime attachment "may be vacated only in certain limited circumstances." Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd., 460 F.3d 434, 443-45 (2d Cir. 2006).

## III.    Analysis

### (1)    Jurisdiction

Defendant argues that "the only contract to which Defendant EASROC is a party" is a "sale and purchase contract" and "any alleged breach of that contract—even with respect to the payment of demurrage—does not give rise to maritime jurisdiction." (Def. Mem. at 12.) Plaintiff argues that "[w]hile [the agreement] provide[s] for the sale of . . . steel scrap . . . [it] has a significant maritime component . . . that . . . requires [Defendant] to pay demurrage 'per the Charter Party covering the respective voyage.'" (Pl. Mem. at 15.)

"Demurrage claims clearly fall within the court's admiralty jurisdiction." Orient Atl. Parco, Inc. v. Maersk Lines, 740 F. Supp. 1002, 1006 (S.D.N.Y. 1990). Plaintiff's claim that Defendant breached its obligation to pay demurrage, a "maritime obligation . . . severable from the non-maritime obligations of the contract," allows the Court to "exercise admiralty jurisdiction." Folksamerica Reins. Co. v. Clean Water of N.Y., 413 F.3d 307, 314 (2d Cir.

2

2005). The contract specifically "oblig[es] [Defendant] to compensate [Plaintiff] for demurrage owed to the vessel." See Aston Agro-Industrial AG v. Star Grain, No. 06 Civ. 2805, 2006 WL 3755156, at *4 (S.D.N.Y. Dec. 20, 2006).

**(2)    Merits**

Defendant argues, among other things, that "given [a] veritable laundry list of knowingly false allegations made in the Verified Complaint, the Court . . . [should] vacate the attachment." (Def. Mem. at 17.) Plaintiff argues, among other things, that "[t]here is a reasonable factual basis for every allegation in the Verified Complaint." (Pl. Mem. at 19, 22.)

Plaintiff "has a valid prima facie admiralty claim against the [D]efendant." See Aqua Stoli, 460 F.3d at 445. Plaintiff does "need not [to] provide any supporting evidence" to oppose the Motion to Vacate, because "its [C]omplaint [will] suffice." See Tide Line, Inc. v. Eastrade Commodities, Inc., No. 06 Civ. 1979, 2006 U.S. Dist. LEXIS 95870, at *16, 22 (S.D.N.Y. Aug. 15, 2006).

**IV.    Conclusion and Order**

For the reasons stated herein, Defendant's Motion to Vacate is denied.

Dated: New York, New York
       September 28, 2007

*RMB*

_____
RICHARD M. BERMAN, U.S.D.J.

3

**CERTIFICATE OF SERVICE**

I, Simon Harter, an attorney duly admitted to practice before this Honorable Court, hereby affirm that on this 11th day of July, 2008, I served a true copy of the foregoing Affirmation of Imogen Jane Rumbold dated July 10, 2008, and Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Vacate and Dismiss and to Intevenor's Motion to Vacate, upon all counsel of record by Electronic Means, using the ECF system for the United States District Court for the Southern District of New York in accordance with Section 5 of this Court's Procedures for Electronic Case Filing dated March 6, 2003.

By:     _____
        Simon Harter (SH-8540)