UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------X

PETRACO OIL CO. LTD.:

               Plaintiff,                        Civil Action No.:  08-cv-03115 (PAC)

       -against-

PROGETRA SA,

              Defendant.

----------------------------------------------------X

## AFFIRMATION OF IMOGEN JANE RUMBOLD

I, Imogen Jane Rumbold, affirm under the penalty of perjury that:

1.      I am a Solicitor of the Supreme Court of England and Wales, having been called to the Bar in 1979 and, thereafter being admitted as a solicitor in 1987.  I am a partner in the law firm of Lawrence Graham, LLP, at 4 More, London Riverside, London SE1 2AU, United Kingdom. Lawrence Graham represent Petraco Oil Co. Ltd ("Petraco")., the plaintiff in this action, in pursuing numerous claims against the defendant, Progetra SA, amounting to a sum exceeding USD6 million plus interest, plus costs.

2.      I submit this Affirmation, based on my personal knowledge, in response to the Motion to Vacate Attachment and Dismiss Verified Complaint filed by Progetra and the Motion to Vacate Order of Maritime Attachment filed by Raiffeisen Zentralbank Osterreich A.G., which I shall refer to as RZB.

3.      I have been instructed by Petraco to pursue various claims against Progetra arising under a contract dated 27th July 2004 ("the Contract") a copy of which I exhibit to this Affirmation (Exhibit "A") and various addenda to that Contract.   It can be seen

                                                    

that the intention of this Contract was that on certain agreed terms, including terms relating to shipment, Progetra would supply four cargoes of 30,000 metric tonnes plus/minus 5% of gasoil to Petraco.  Over the intervening years since those first cargoes were delivered, Progetra has agreed to supply, and in some cases actually supplied Petraco with various quantities and grades of oil pursuant to various addenda to the original Contract.  In fact, there have been 103 addenda in all.  I also exhibit (as Exhibits B and C) two examples of such addenda (Nos. 97 and 103) that set out the nature of the product to be supplied and terms relating to shipment and pricing but in all cases providing:-

"The present addendum ... is an integral part of the Contract No. P-09/3 dated 27th July 2004.

All other terms of the Contract No. P-09/3 dated 27th July 2004 remain unchanged."

4.      As can be seen from the principal provisions of the Contract, the terms provide, inter alia, for payment for cargo in advance of its supply; for arbitration of disputes under English law; and in clauses 6, 7 and 11 of the Contract, the parties provided for a specific mechanism of shipping terms comprised of various respective obligations and the allocation of different costs relative to the shipments.

5.      I think it might be helpful to the Court if I give some background to the disputes that have arisen between the parties and for which a Rule B Attachment has been sought, at least in respect of some of the claims.  At the start of the contractual relations between the parties, the pre-payment system worked reasonably well and the parties maintained a running account, reviewed by them on a regular basis, showing the amount of pre-financing and deductions made for cargoes supplied by Progetra.

But Progetra failed, on several occasions, to supply cargoes under addenda for which pre-payment had been made.  By the 30th November 2007, there was due

and owing to Petraco, the sum of USD3,537,858.76, a figure that Progetra accepted was the case when it executed a letter acknowledging the debt (Exhibit "D"). Since Progetra has failed to pay this sum to Petraco, Petraco intends to recover the money through London arbitration and has notified Progetra as such, in a fax dated 6th May 2008 calling for arbitration (Exhibit E), a point to which I shall return below.

**Maritime Claims**

6.  In addition to the claims referred to above, Petraco also has substantial claims against Progetra for demurrage, shifting and tug expenses and other vessel-related charges and expenses incurred in connection with the loading and carriage of the cargoes. These claims are reflected in the Verified Complaint filed by Petraco in this action. In submitting these claims, Petraco has been very careful in asking for Rule B attachment relief to include only those claims that are essentially maritime in nature, the details of which I shall set out below.

7.  I have noted that in challenging Petraco's attachment, Progetra disputes that the claims asserted by Petraco arise out of a *"vessel's participation in maritime commerce"*. This is plainly wrong. It is the essence of the Contract that cargo to be delivered by Progetra to Petraco must be delivered on board a vessel, nominated in each case by Petraco, pursuant to the provisions of clause 6 of the Contract. Without a vessel, neither of the parties to the Contract would be able fully to perform their obligations under the Contract. Clause 6 provides very specific provisions as to how and when nomination of the vessel should take place; what details should be included in any nomination (e.g. the exact name of the vessel, flag, date of build etc) and who should be responsible for vessel's charges arising under the Contract. Of course it is not possible, in a contract which provides for several shipments to be made, to identify the name of the carrying vessel. This can only be done if Progetra has confirmed that there is a cargo going to be made available for Petraco to lift.

Once a delivery window has been fixed, as per clause 7 of the Contract, then the vessel can be nominated and loaded as per Contract.

8.      Clause 7 of the Contract also provides that Progetra has an obligation to provide *"one safe accessible port/one safe accessible berth ... **free of charge** to buyer, FOB basis Novorossiysk."*

If the berth is not safe and accessible on the vessel's arrival, Progetra would be in breach of Contract and Petraco could make a claim.  If the vessel incurs charges, such as shifting expenses or tug expenses because Progetra has failed to provide one berth at which the whole cargo could be lifted or one accessible berth to which the vessel can proceed under her own steam and without incurring additional charges, then Progetra is responsible for those shifting and tug charges incurred thereby.

9.      The Contract also provides, in clause 11, provisions relating to loading rates for the carrying vessel *"per hour per one pump"* and what should happen if the vessel does not meet such pumping warranties.  In the event that the vessel meets her pumping warranties but time for loading is still exceeded, Petraco is entitled to recover demurrage.   Demurrage would also be payable if Progetra fails to meet its responsibility *"to provide Buyers with cargo within an agreed laycan".*

10.     This clause, and clauses 6 and 7, deal purely with the shipment of the oil cargoes sold by Progetra to Petraco. Contrary to the point made by RZB in its Motion to Vacate Order of Maritime Attachment, the inclusion of these clauses take the Contract outside the classical definition of an FOB contract.  Under English law, which governs the contract, it is accepted that an FOB contract is a *"flexible instrument"* (as per Devlin J in the case of Pyrene Co Ltd v. Scindia Navigation Co Ltd [1954] 2 QB 402).  In the Pyrene & Scindia case, the Seller, under an FOB contract was held to be directly a party to the contract of carriage at least until he takes out the bill of lading in the Buyer's name.  Thereafter, what other obligations

he has over and above the classical obligations of an FOB seller, will depend upon the additional provisions of the governing contract. In this case, the governing Contract provides what should happen if charges are incurred during the course of loading. Obviously tug and shifting expenses at the loadport are incurred prior to or during loading of the cargo on board the vessel. In these cases no title could have passed at that stage but in any event, this Contract makes it clear that the Progetra's obligations continue under this FOB Contract after the vessel has completed loading and at least up to the time that hoses are disconnected. Whilst it may indeed be the case that title will have passed once the cargo passes over the ship's flange, the obligations to pay demurrage will not have been extinguished by the mere fact that cargo has been loaded on board a vessel, the title to which has passed to Petraco as the Buyer.

11.     The one heartening thing that arises from the challenge that is presently being mounted in New York to the claim for a Rule B Attachment is that Progetra seems finally to recognise that disputes arising between the parties should be submitted to London arbitration. This is what Petraco have been calling for, so far without effect. The law and jurisdiction clause in the Contract, clause 15, is silent as to the number of arbitrators that should be appointed to hear disputes arising between the parties. In these circumstances, English law, as set out in the Arbitration Act 1996, provides that the reference must be to a sole arbitrator. Exhibit E, to which I have referred previously, is a copy of a fax that I sent to the Defendant on the 6th May 2008, suggesting a number of arbitrators that could act as sole arbitrator in the dispute and calling upon the Defendant to agree one of those arbitrators or to suggest a list of their own preferred arbitrators for my clients to consider. The response that I received back from Swiss lawyers appointed by the Defendant (Brunoni, Molino, Mottis, Adami) on the 26th May is also exhibited (Exhibit F). From this document it can be seen that Progetra alleges that some sort of stay of proceedings was agreed whilst an assessment of claims was being carried out, a fact which my clients,

Petraco, strongly reject.   In any event, since Brunoni Molino's fax was sent, an assessment of sorts, has been delivered by an auditing company so there should be no reason to delay in agreeing an arbitrator.   Brunoni, Molino also stated, however, that it was their clients' view that in the circumstances, our clients were *"not entitled to start arbitration proceedings or any other enforcement proceedings"*, a fact which our clients also reject.  We have not been able to shift them from this view from that day to this so the fact remains that an arbitration panel has still not been constituted. It is not necessary to have the panel appointed before it can be said that the arbitration has commenced.   Our fax of 6th May 2008 is sufficient to start the arbitration (see Nea Agrex SA v. Baltic Shipping Co Ltd – the "AGIOS LAZAROS" – [1976] 2 LLR 47).  Now that Progetra recognises that it is appropriate for disputes to be arbitrated, we hope that Progetra might also recognise that we should try and agree a sole arbitrator to hear disputes between the parties.  If they fail to do so, then it will be necessary to seek Court intervention in order to proceed with the arbitration on the foregoing basis.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct

**Executed on the 10th day of July 2008**

IMOGEN JANE RUMBOLD

# EXHIBIT "A"

CONTRACT No. P-O9/3

MOSCOW                                              27 JULY 2004

1. SELLER:
--------
PROCETRA S.A.
VIALE STEFANO FRANSCINI 16, CH-6900
LUGANO
SWITZERLAND

2. BUYER:
--------
PETRACO OIL COMPANY LTD
26, GLATEGNY ESPLANADE, P.O. BOX 357
ST. PETER PORT
GUERNSEY
CHANNEL ISLANDS

3. PRODUCT(S):
------------
GASOIL 0.2 PCT SULPHUR MAXIMUM.

4. QUALITY:
---------
THE QUALITY SHALL BE GASOIL AS NORMALLY EXPORTED FROM NOVOROSSIYSK
MEETING THE FOLLOWING GUARANTEED SPECIFICATIONS:

| | |
|---|---|
| DENSITY AT 20 DEG C KG/L NOT MORE | 0.860 MAX |
| CETANE INDEX     NOT LESS | 45 MIN |
| VISCOSITY AT 20 DEG C (MM2/S) | 3 MIN   6 MAX |
| FLASH POINT (CLOSED CUP) DEG C NOT LESS | 62 MIN |
| POUR POINT DEG C NOT MORE | -10 MAX |
| CLOUD POINT DEG C | -5 |
| SULPHUR % NOT MORE | 0,2 |
| MERCAPTANE SULPHUR % NOT MORE | 0,008 |
| H2S CONTENT | ABSENT |
| TEST WITH COPPER PLATE | POSITIVE |
| ALKALI | ABSENT |
| ACIDITY MG KON/100 G GASOIL NOT MORE | 10 |
| IODINE NUMBER G IODINE/100 G GASOIL NOT MORE | 6 |
| OXYD ASHES % NOT MORE | 0,005 |
| CONTRADSON CARBON RESIDUE 10TH% OF REST | 0,25 |
| FILTERING COEFFICIENT NOT MORE | 3 |
| DISTILLATION DEG C | |
| - 50 PCT DEG C NOT MORE | 280 MAX |
| - 96 PCT DEG C NOT MORE | 360 MAX |
| SEDIMENTS | ABSENT |

QUALITY TO BE TESTED PER GOST METHODS.

5. QUANTITY:
-----------

FOUR CARGOES OF 30,000 METRIC TONS +/- 5 PCT (ONE CARGO PER MONTH IN BUYER'S OPTION AND THREE CARGOES PER MONTH IN SELLER'S OPTION) EACH PER MONTH. EXACT VOLUMES TO BE MUTUALLY AGREED EACH CALENDAR MONTH. EACH CARGO TO BE LOADED IN ONE LOT AS FULL CARGO.

6. NOMINATION:
-------------

IT IS BUYER'S RESPONSIBILITY TO NOMINATE VESSEL TO SELLER LATEST 3 (THREE) WORKING DAYS PRIOR THE 1ST DAY OF THE 2(TWO) DAYS AGREED LAYCAN IN ORDER TO ALLOW SELLERS TO OBTAIN A LAYCAN AND STEM CONFIRMATION. IN ANY CASE THE NOMINATED VESSEL IS ALWAYS SUBJECT TO ACCEPTANCE BY THE LOADING TERMINAL.

SUCH NOMINATION TO REACH SELLERS AND TO INCLUDE :
EXACT NAME OF THE VESSEL, FLAG, DATE OF BUILT, DWT, ARRIVAL AND FULLY LADEN DRAFT, LOA, BEAM, ETA LOADPORT, CARGO GRADE AND THE QUANTITY OF CARGO TO BE LOADED.
PORT RESTRICTIONS:
TANKER WITH A DEADWEIGHT KEEPING VESSEL'S LOADING TO A DRAFT OF NOT MORE THAN: 12,0 METERS AND LENGTH OF UP TO 200 M.

GASOIL WILL BE SHIPPED OUTSIDE THE TERRITORY OF THE MEMBER STATES OF THE FORMER USSR.

SELLER IS RESPONSIBLE FOR CLEARANCE STEM WITH LOADING TERMINAL.
BUYER IS RESPONSIBLE FOR CLEARANCE VESSEL WITH HARBOUR AUTHORITIES VIA THEIR LOCAL VESSEL AGENTS.

IF THE NOMINATED VESSEL IS LATE FOR HER AGREED POSITION ALL FINES, LOSSES AND EXPENSES CONNECTED WITH THE OVERFILLING OF THE TERMINAL AND THE RESULTING BLOCKAGE OF THE RAILWAY WILL BE FOR THE BUYERS' ACCOUNT. THESE CLAIMS SHOULD BE FULLY DOCUMENTED INCLUDING A COPY OF RAILWAY CLAIMS AND CLAIMS FROM THE TERMINAL. THE SELLERS SHALL MAKE AN EFFORT TO MINIMIZE SUCH EXPENSES.

7. DELIVERY/PERIOD:
-----------------

ONE SAFE ACCESSIBLE PORT/ONE SAFE ACCESSIBLE BERTH NOVOROSSIYSK, KOMBINAT IMPORTPISCHEPROM TERMINAL PROVIDED BY SELLER FREE OF CHARGE TO BUYER, FOB. BASIS NOVOROSSIYSK. DURING THE PERIOD WITHIN JANUARY-DECEMBER 2005 PER VESSELS TO BE NOMINATED BY BUYER.

THE 26TH OF THE MONTH PRECEEDING DELIVERY BUYER TO INDICATE SELLER A 10 DAYS WINDOW. SELLER TO NARROW DOWN SUCH 10 DAYS WINDOW TO 2 DAYS LATEST BEFORE THE END OF THE MONTH PRECEEDING DELIVERY MONTH.

8. DETERMINATION OF QUALITY AND QUANTITY:
--------------------------------------

QUALITY TO BE ASCERTAINED AT LOAD PORT BY MUTUALLY AGREED, FIRST CLASS INTERNATIONAL INDEPENDENT INSPECTOR ("SAYBOLT") WHOSE FINDINGS

SHALL BE FINAL AND BINDING ON BOTH PARTIES SAVE FRAUD OR MANIFEST ERROR.

BILL OF LADING QUANTITY IN THE PORT OF LOADING WILL BE FINAL AND BINDING FOR BOTH PARTIES SAVE FOR FRAUD OR MANIFEST ERROR.
QUALITY TO BE BASED ON SHIP'S TANKS COMPOSITE SAMPLE DRAWN AFTER LOADING.
INSPECTION COSTS TO BE SHARED 50/50 BETWEEN BUYER AND SELLER.

9. PRICE:
--------
PRICE BASED ON B/L QUANTITIES (IN VAC) AT LOAD PORT (SAVE FRAUD OR MANIFEST ERROR) FOB BASIS NOVOROSSIYSK, EXPRESSED IN US DOLLARS PER METRIC TON:

EQUAL TO THE HIGH QUOTATION PUBLISHED BY PLATT'S EUROPEAN MARKETSCAN UNDER THE HEADINGS "FOB (MED) ITALY» FOR GASOIL 0.2 APPLICABLE ON BILL OF LADING DATE MINUS / PLUS A DISCOUNT / PREMIUM IN USD (TO BE AGREED BETWEEN THE PARTIES TEN DAYS BEFORE ARRIVAL OF THE VESSEL TO LOAD PORT AT THE LATEST). IF WITHIN THE AFORE MENTIONED PERIOD THE PARTIES DID NOT MANAGE TO AGREE THE PRICE THE SELLERS RESERVE THE RIGHT TO SELL THE CARGO IN QUESTION TO THE THIRD PARTY.

IF NO PLATT'S IS PUBLISHED ON THE B/L DATE, THEN THE IMMEDIATELY PRECEDING QUOTATIONS TO APPLY.

THIS PRICE IS BASED ON THE DENSITY AT 15 DEG C OF 0.845 AND WILL ESCALATE/DE-ESCALATE ARITHMETICALLY ACCORDING TO THE ACTUAL DENSITY CONSISTENT WITH THE B/L MEASUREMENT AND CONVERTED BY THE INDEPENDENT INSPECTOR FROM 20 DEG C TO 15 DEG C. (VAC-VAC / AIR-AIR)

SUCH ESCALATION/DE-ESCALATION WILL BE DIVIDED 50/50 BUYER/SELLER.
PRICING TO BE ROUNDED TO TWO (2) DECIMALS.

10. PAYMENT:
--------
PAYMENT FOR THE GOODS IN THE AMOUNT OF 6 000 000,00 (SIX MILLION) US DOLLARS WILL BE EFFECTED IN ADVANCE ACCORDING TO FOLLOWING SCHEDULE:
2 000 000,00 (TWO MILLION) US DOLLARS ON THE 29 OF JULY, 2004 AT THE LATEST.
1 500 000,00 (ONE MILLION AND FIVE HUNDRED THOUSANDS) US DOLLARS ON 05 OF SEPTEMBER AT THE LATEST
500 000 (FIVE HUNDRED THOUSAND) US DOLLARS LATEST 28 SEPTEMBER 2004
2 000 000,00 (TWO MILLION) US DOLLARS DURING OCTOBER 2004.
FOR THE QUANTITY OF ABOUT 1 500 000,000 MTS OF GASOIL 0,2 TO BE DELIVERED UNDER THE PRESENT CONTRACT F.O.B. NOVOROSSIYSK WITHIN JANUARY-DECEMBER 2005 AGAINST PROVISIONAL INVOICES OF SELLERS.

THE PREPAYMENT TO BE REFUNDED BY THE SELLERS WITHIN JANUARY-DECEMBER 2005.

125 000 USD TO BE DEDUCTED FROM EVERY INVOICE FOR A CARGO DELIVERED EX NOVOROSSIYSK WITHIN JANUARY-DECEMBER 2005.

THE A.M. INVOICES WILL ALSO CONTAIN A DEDUCTION OF ONE MONTH LIBOR RATE ON BILL OF LADING DATE PLUS 3 PCT FOR THE NUMBER OF DAYS BETWEEN ACTUAL PAYMENT DATE AND THE DATE OF PREPAYMENT.

PAYMENT TO BE EFFECTED IN USD BY TELEGRAPHIC TRANSFER IN IMMEDIATELY AVAILABLE FUNDS, PAYABLE AT THE COUNTERS OF SELLER'S BANK, WITHOUT OFFSET, DISCOUNT OR COUNTERCLAIM (EXCEPT STATED HEREABOVE) AND FREE OF ALL CHARGES.

FOR THE REST PAYMENTS COVERING THE AMOUNT OF CARGOES VALUE BUYER TO OPEN AN IRREVOCABLE STAND-BY LETTER OF CREDIT THROUGH A FIRST CLASS BANK AND IN A WORDING BOTH TO BE ACCEPTABLE TO SELLER AND SELLER'S BANK LATEST 5 WORKING DAYS PRIOR THE 1ST DAY OF AGREED 2 DAYS LAYCAN.

PAYMENT SHALL BE MADE UPON PRESENTATION OF INVOICE (FAX COPY IS ACCEPTABLE) AND FULL SET ORIGINAL BILLS OF LADING AND OTHER USUAL SHIPPING DOCUMENTS.

IN THE EVENT THAT THE SHIPPING DOCUMENTS ARE NOT AVAILABLE BY DUE DATE, PAYMENT TO BE MADE AGAINST SELLER'S INVOICE AND LETTER OF INDEMNITY (FAX ACCEPTABLE FOR BOTH WITH HARD COPIES TO FOLLOW SOONEST) IN A FORM TO BE ACCEPTABLE TO BUYER.

THESE DOCUMENTS, AS WELL AS OTHER DOCUMENTS REQUIRED FOR PAYMENT PURPOSES, SHOULD BE IN BUYER'S OFFICE MINIMUM ONE (1) CLEAR WORKING DAY BEFORE THE DATE OF PAYMENT IN ORDER PAYMENT CAN BE ARRANGED IN TIME OTHERWISE PAYMENT WILL BE DELAYED ACCORDINGLY.

SELLERS WILL PAY BUYERS INTEREST FOR EACH DAY FOR THE PERIOD FROM THE DATE OF PAYMENT TILL 10 CALENDAR DAYS AFTER B/L DATE (B/L DATE = DAY ZERO) AT ONE MONTH LONDON INTERBANK OFFERED RATE (LIBOR) PLUS 1 (ONE) PERCENT ON THE DATE WHEN PAYMENT OF THE INVOICE AMOUNT SHOULD HAVE BEEN MADE. THE RATE WILL BE APPLIED ON THE BASIS OF QUOTATION PUBLISHED BY THE INTERNATIONAL SWAP AND DERIVATIVES ASSOCIATION (REUTER'S PAGE ISDA).

IF PAYMENT FALLS DUE ON A SATURDAY OR BANK HOLIDAY OTHER THAN A MONDAY IN NEW YORK, PAYMENT SHALL BE MADE ON THE LAST PRECEDING BANKING DAY. IF PAYMENT FALLS DUE ON A SUNDAY OR MONDAY BANK HOLIDAY IN NEW YORK, PAYMENT SHALL BE MADE ON THE NEXT SUCCEEDING BANKING DAY.

11.LAYTIME AND DEMURRAGE :

----------------------------------

VESSEL NOMINATED SHOULD BE EQUIPPED TO RECEIVE A MINIMUM LOADING RATE OF 1200 METRIC TONS PER HOUR PER ONE PUMP. IF THIS REQUIREMENT IS MISSED ALL CONSEQUENCES OF THE DEMURRAGE OF THE NOMINATED VESSEL ARE FOR BUYER'S ACCOUNT.

IF THE PERFORMING VESSEL CAN MEET THE ABOVE THE LAYTIME ALLOWED TO
BE FIFTY PERCENT OF WHAT IS AVAILABLE UNDER CHARTER PARTY ( PRO RATED
FOR PART CARGO) PLUS 6 HOURS N.O.R.
THE MASTER WILL CABLE OR TELEX TO SELLERS AND TO THE SHIPOWNER'S
AGENTS 96/72/48/36/24/12 HOURS ETA NOTICES TO ARRIVAL LOADPORT NOVO.

SELLERS RESPONSIBILITY WILL BE TO PROVIDE BUYERS WITH CARGO WITHIN
AGREED LAYCAN. ANY DELAY IN BERTHING VESSEL DUE TO UNAVAILABILITY OF
CARGO NOT BELONGING TO SELLER OR BUYERS INABILITY TO CONFIRM MAIN
CARGO WILL BE STRICTLY FOR BUYERS ACCOUNT.

IF ACTUALLY INCURRED, AS PER CHARTER PARTY RATE, TERMS AND CONDITIONS
AND EXCEPTIONS OF THE BUYER'S VESSEL. BUYER'S DEMURRAGE CLAIM IF ANY
TO BE FULLY DOCUMENTED (INCLUDING A COPY OF OWNER'S CLAIM, LAYTIME
CALCULATION AND CHARTER PARTY) AND PRESENTED WITHIN 90 DAYS AFTER
BILL OF LADING DATE, FAILING WHICH THEIR CLAIM SHALL BE DEEMED WAIVED
AND ABSOLUTELY BARRED.

12. TAXES:
---------
ALL TAXES, DUTIES, FEES, QUAY DUES AND OTHER CHARGES TO BE PAID INSIDE
THE TERRITORY OF THE FORMER USSR ARE AT SELLER'S EXPENSE. ALL TAXES,
DUTIES, FEES AND OTHER CHARGES TO BE PAID OUTSIDE THE TERRITORY OF THE
FORMER USSR ARE AT BUYER' EXPENSE.

13. LIMITATION OF LIABILITY:
----------------------------
EXCEPT AS EXPRESSLY PROVIDED IN THIS AGREEMENT, NEITHER SELLER NOR
BUYER SHALL BE LIABLE FOR CONSEQUENTIAL, INDIRECT OR SPECIAL
LOSSES/DAMAGES OF ANY KIND ARISING OUT OF OR IN ANY WAY CONNECTED
WITH THE CONCLUSION, THE PERFORMANCE, THE FAILURE TO PERFORM OR THE
TERMINATION OF THIS AGREEMENT.

14. TITLE AND RISK:
-------------------
PROPERTY IN THE PRODUCT, ALL RISKS AND LIABILITIES WITH RESPECT THERETO
SHALL PASS TO BUYER WHEN THE PRODUCT PASSES THE FLANGE CONNECTION
BETWEEN THE DELIVERY HOSE AND THE PERMANENT HOSE CONNECTION OF THE
VESSEL AT THE LOADING TERMINAL.

15. LAW AND JURISDICTION:
-------------------------
THE CONTRACT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE
WITH ENGLISH LAW (WITHOUT REFERENCE TO ANY CONFLICT OF LAW RULES).
THE U.N. CONVENTION ON CONTRACTS FOR THE INTERNATIONAL SALE OF GOODS
(1980) SHALL NOT APPLY.
ANY DISPUTES HEREUNDER SHALL BE SETTLED WITHIN THE EXCLUSIVE
JURISDICTION OF THE LONDON ARBITRATION.

16. FORCE MAJEURE :
--------------------
NEITHER PARTY SHALL BE DEEMED IN BREACH OF THIS AGREEMENT AS A RESULT OF AND BE LIABLE TO THE OTHER FOR ANY FAILURE, OMISSION OR DELAY IN ITS PERFORMANCE IN WHOLE OR IN PART OF ANY OF THE TERMS AND CONDITIONS OF THIS AGREEMENT EXCEPT OBLIGATION TO EFFECT PAYMENT IN DUE TIME TO THE EXTENT THAT SUCH FAILURE, OMISSION OR DELAY ARISES OR RESULTS FROM ANY CAUSE BEYOND THE CONTROL OF A PARTY INCLUDING BUT NOT LIMITED TO:
- COMPLIANCE, VOLUNTARY OR INVOLUNTARY, WITH A DIRECTION OR REQUEST OF ANY INTERNATIONAL, NATIONAL, PORT, TRANSPORTATION, LOCAL GOVERNMENT OR OTHER AUTHORITY OR PERSON PURPORTING TO ACT WITH SUCH AUTHORITY;
- STRIKE OR OTHER LABOUR DIFFICULTY FROM WHATEVER CAUSE ARISING, EVEN THOUGH IT COULD BE SETTLED BY ACCEDING TO THE DEMANDS OF A LABOUR GROUP;
- NATURAL CALAMITY, FIRE, EXPLOSION;
- WAR, HOSTILITIES DECLARED OR UNDECLARED, EMBARGO, BLOCKADE, CIVIL UNREST, RIOTS, TERRORISM, AND ANY CONSEQUENCE THEREOF;
- PERILS OF THE SEA, STORM, FLOODS, HAZARDOUS WEATHER OR OTHER ACTS OF GOD;
- HINDRANCES TO TRANSPORTATION OR DELIVERY, LOSS OF TANKER TONNAGE WHETHER OR NOT BY REQUISITION, WRECKAGE OF EQUIPMENT, BREAKDOWN OF MACHINERY OF THE VESSEL OR ADVERSE WEATHER;
PROMPT WRITTEN NOTICE OF ANY SITUATION OF FORCE MAJEURE AND, SO FAR AS POSSIBLE OF ITS EXTENT AND DURATION AS WELL AS OF ITS SUSPENSION IN FULL OR IN PART, SHALL BE GIVEN BY THE PARTY SO AFFECTED.
THE TIME OF SELLER TO MAKE, OR BUYER TO RECEIVE, DELIVERY HEREUNDER SHALL BE EXTENDED DURING ANY PERIOD IN WHICH DELIVERY SHALL BE DELAYED OR PREVENTED BY REASON OF ANY OF THE FOREGOING CAUSES UP TO A TOTAL OF THIRTY (30) DAYS. IF ANY DELIVERY HEREUNDER SHALL BE SO DELAYED OR PREVENTED FOR MORE THAN THIRTY (30) DAYS, EITHER PARTY MAY TERMINATE THIS CONTRACT WITH RESPECT TO SUCH DELIVERY UPON WRITTEN NOTICE TO THE OTHER PARTY.

19. OTHER CONDITIONS:
--------------------
WHEN NOT INCONSISTENT WITH THE ABOVE, INCOTERMS FOB 2000 AND SUBSEQUENT AMENDMENTS SHALL APPLY.

20. OPERATIONAL CONTACT:
--------------------
OPERATIONAL MATTERS FOR THIS CONTRACT WILL BE HANDLED BY:

PETRACO OIL COMPANY LTD
===========================
26, GLATEGNY ESPLANADE, PO BOX 357
ST. PETER PORT
GUERNSEY
CHANNEL ISLANDS

PROGETRA S.A.

PROGETRA S.A.
VIALE STEFANO FRANSCINI 16, CH – 6900
LUGANO, SWITZERLAND
BANKING DETAILS:

BNP PARIBAS (SUISSE) S.A., GENEVA, GENEVA CH
US-DOLLAR ACCOUNT 82403/2N

RZB, WIEN, ACCOUNT NO.: 570-50.969.260

MOSCOW OFFICE:
RUSSIA, MOSCOW,
113035, RAUSHSKAYA NAB., 16, 8TH FLOOR
TEL: +7 095 789 89 59
FAX: +7 095 789 89 58
CONTACT PERSONS: AGISHEVA OLGA

SELLER:
PROGETRA S.A.

BUYER:
PETRACO OIL COMPANY LTD.

# EXHIBIT "B"

*x Francis*
*Jowel*

Addendum № 97
To the Contract No P-09/3 dated 27 July 2004

04 September 2007

...pany "Progetra S.A" hereinafter referred to as "Sellers" and Messrs "Petraco oil Company Ltd" hereinafter referred to as "Buyers", for the purpose of this Contract both referred to as the "Parties", have agreed following amendment:

For the cargo of Heating Oil to be shipped during September 20 – October 20, 2007 on m/t "TBN" / sub the price should be calculated as follows:

The Parties to agree the price as soon as possible. The additional discount of 7 USD/mt to apply to the agreed price.

The price could be triggered any time starting from the moment of the signing of the contract till its expiration. Trigger to be done of mutually agreed between the parties month trading on ICE at the time of such agreement.

Above price is based on a density at 15 deg c of 0.8450 and will escalate/de-escalate arithmetically according to actual b/l density at 15 deg c as per bill of lading.

Quantity: Three cargoes of 5 400 +/- 10% mtons in Seller's option.

Quality: correspondent to quality of Gasoil as usually supplied ex Novorossiysk.

Payment:

For each cargo lot of about 5 400 mtons the prepayment to be made against Supplier's invoice and to the following account:

Correspondent bank:
Deutsche Bank, Frankfurt am Mein
SWIFT CODE: DEUTDEFF acc.949924500
Beneficiary bank:
Central Bank of Turkmenistan
SWIFT CODE: CBTUTM 2A
Account No: 001832057
Beneficiary: State Fund of Development of Oil and Gas Industry and Mineral Resources of Turkmenistan
Acc.No. 001735604

The prepayment for the next lots to be made against presentation of Seller's invoice, Bills of Lading for the previous cargo and storage warrant issued by the terminal in Makhachkala.

The cost of pre financing will be calculated at a rate of Libor +3.0 and will be paid by Progetra SA to Petraco Oil Company Ltd in the form of a discount to final cargo price

In case of delay the penalties should be calculated at the rate of Libor +8,0.

Final payment in USD by telegraphic transfer in immediately available funds, payable at the counters of seller's bank, without offset, discount or counterclaim and free of all charges 10 (ten) calendar days after Bill of Lading date (B/L date – date zero).

Payment to be made against presentation of seller's commercial invoice and original shipping documents.

In the event that the shipping documents are not available by due date, payment to be made against seller's invoice and letter of indemnity (telex acceptable for both), in a form and countersigned by a first class bank both to be acceptable to buyer.

Buyer will open a documentary letter of credit in favour of seller.

The present Addendum No. 97 is an integral part of the Contract No P-09/3 dated 27 July 2004. All other terms of the Contract No. P-09/3 dated 27 July 2004 remain unchanged.

The present Addendum No. 97 comes into force from the moment of its signing.

THE SELLER

THE BUYER

# EXHIBIT "C"

Addendum № 103
To the Contract No P-09/3 dated 27 July 2004

Moscow                                                                28 September 2007

Company "Progetra S.A" hereinafter referred to as "Sellers" and Messrs "Petraco oil Company Ltd" hereinafter referred to as "Buyers", for the purpose of this Contract both referred to as the "Parties", have agreed following amendment:

For the cargo of ULSD to be shipped during October 05 – December 20, 2007 on m/t "TBN" / sub in several lots consistent with loadings into vessels at Turkmenbashi refinery of about 2 800 to 3 200 mtons each the price should be as follows:

For the quantity 50 000 +/- 10% in Seller's option (about 25 000 mtons to be dispatched from Turkmenbashi refinery in October 2007 and about 25 000 to be dispatched in November 2007) the price should be:

High FOB quotation as published by Platt's European Marketscan for Diesel 50 ppm under the heading FOB (Med) Italy valid for the date immediately following the B/L date of a vessel loading at Turkmenbashi refinery (B/L = 0, reference date = 1) minus a discount of USD 10,50 per metric ton. If there is no publication for the pricing date than immediately following such pricing date Platt's publication to apply.

Above price is based on a density at 15 deg c of 0.8450 and will escalate/de-escalate arithmetically according to actual b/l density at 15 deg c as per bill of lading.

The loading dates should be mutually agreed between the parties.

Quality: French summer diesel with the following specification:

| Property | Units | Limits | | Test method $a$ |
|---|---|---|---|---|
| | | Min | Max | |
| Cetane number $c$ | | 51,0 | | EN ISO 5165 |
| Cetane index | | 46,0 | | EN ISO 4264 |
| Density at 15 deg C $b$ | Kg/m3 | 820 | 845 | EN ISO 3675 |
| | | | | EN ISO 12185 |
| Density at 15 deg C (in air) | Kg/m3 | To be reported | | Calculated |
| Polycyclic aromatic hydrocarbons $d$ $e$ | %(m/m) | | 11 | EN 12916 |
| Sulphur content $b$ | mg/Kg | | 50 | EN ISO 20884 |
| | | | | EN ISO 20884 |
| Flash point | deg C | 60 | | EN 22719 |
| Carbon residue (on 10% distillation residue) $f$ | %(m/m) | | 0,30 | EN ISO 10370 |
| Ash content | %(m/m) | | 0,01 | EN ISO 6245 |
| Water content | mg/Kg | | 200 | ISO 12937 |
| Total contamination | mg/Kg | | 24 | EN 12662 |
| Copper strip corrosion (3h at 50 deg C) | rating | class 1 | | EN ISO 2160 |
| Oxidation stability | g/m3 | | 25 | EN ISO 12205 |
| Lubricity, correct. wear scar diam. (wsd 1.4) at 60 deg C | micron | | 460 | ISO 12156-1 |
| Viscosity at 40 deg C | mm2/s | 2,00 | 4,50 | EN ISO 3104 |
| Distillation $g$ $h$ | | | | EN ISO 3405 |
| recovered at 250 deg C | %(V/V) | | < 65 | |

| recovered at 350 deg C | %(V/V) | 85 | | | |
|---|---|---|---|---|---|
| 95% (V/V) recovered at | deg C | | 360 | | |
| Fatty acid methyl ester (FAME) content *f* | %(V/V) | | | 5 | EN 14078 |

| Appearance | | | clear and bright | | ASTM D 4176 |
|---|---|---|---|---|---|
| Colour | | | | 2 | ISO 2049 |
| Conductivity | pS/m | | 150 | | ASTM D 2624 |

| Property | Units | Limits | | | | Test method *a* |
|---|---|---|---|---|---|---|
| | | Winter | | Summer | | |
| | | Min | Max | Min | Max | |
| CFPP | deg C | | -15 | | 0 | EN 116 |
| Cloud Point | deg C | | -5 | | 5 | EN 23015 |

Data ultima modifica 01-lug-04

Summer : April 1st - September 30 th
Winter : October1st - March 31st

The cargo could be doped for CFPP improvement as well as lubricity and electro conductivity, the cost of services to be split between Buyers and Seller.

Payment:
Payment in USD by telegraphic transfer in immediately available funds, payable at the counters of Seller's bank, without offset, discount or counterclaim and free of all charges 10 (ten) calendar days after Bill of Lading date (B/L date – date zero).

Payment to be made against presentation of seller's commercial invoice and original shipping documents.

In the event that the shipping documents are not available by due date, payment to be made against seller's invoice and letter of indemnity (telex acceptable for both), in a form and countersigned by a first class bank both to be acceptable to buyer.
Buyer will open a documentary letter of credit in favour of buyer.

The buyer shall effect the prepayment of 1 500 000 USD against Seller's invoice. The sum of prepayment to be refunded with each vessel pro rated.

The present Addendum No. 103 is an integral part of the Contract No P-09/3 dated 27 July 2004, All other terms of the Contract No. P-09/3 dated 27 July 2004 remain unchanged.

The present Addendum No. 103 comes into force from the moment of its signing.

THE SELLER

THE BUYER

# EXHIBIT "D"

# PETRACO OIL COMPANY LTD

Messrs.
PROGETRA SA
Viale S. Franscini 16
6900 Lugano

Lugano, 30.11.2007

### OUTSTANDING LOAN

Dear Sirs,

We refer to our letter dated 28.11.2007 and we hereby
enclose the corrected invoice no. 1495 for USD 25,454.25
(i.o. $ 16,991.27).

Consequently, we further enclose the corrected details of the
loan outstanding which shows an amount of USD 3'537'858.76
still due to us.

We kindly ask you to return copy of this letter duly signed by
authorised officers as an acknowledgement of the outstanding
amount under the loan granted to you.

Very best regards,

PETRACO OIL CO LTD
R. BONZI

## 2007 dovuto da Progetra
## PROGETRA SA ADVANCED PAYMENTS

| AMOUNT $ | DESCRIPTION | 31/12/2006 |
|---|---|---|
| 4,818,000,00 | BALANCE | 31/12/2006 |
| 207,690,77 | INTSTS LOAN 4,8 M UP TO 31.12.06 | |
| | VARIOUS DEMURRAGE | |
| 39,405,55 | INTEREST ON LOAN 4,8 M - 2007 | |
| | INTEREST REFOMEGA PRINCESS | |
| 15,966,37 | INTERESTS ON 4,8 M 5/2-2/2 | |
| 1,029,29 | INTERESTS ON 4,8 M 20/2 - 2/2 | |
| 17,219,99 | DEADFREIGHT SELAY CHALLANGER -061209 | |
| 97,185,76 | DEMURRAGE SELAY CHALLENGER 061209 | |
| 6,995,94 | DEMURRAGE PRIDE A (2) - 081202 | |
| 49,232,75 | INTERESTS ON 4,8 M 21/2 - 12/04 | |
| 63,170,36 | INTERESTS ON LOAN 4,8 12/04-7/06 | |
| 16,952,63 | INTERESTS ON LOAN 4,8 7/06-25/06 | |
| 30,670,06 | INTERESTS ON LOAN 25,6-31.07.07 | |
| 23,431,25 | Demurrages Seychelles Pride | |
| 30,425,48 | Additives Alfa Marmara | |
| | DOP ING COSTS | |
| | DOP ING COSTS | |
| | DOP ING COSTS | |
| | DOP ING COSTS | |
| | DOP ING COSTS | |
| 5,587,617,19 | | |

## rimborsato da Progetra
## REIMBURSEMENTS

| AMOUNT $ | DESCRIPTION | DATE OF REIMB | |
|---|---|---|---|
| 207,690,77 | REIMB.INTERESTS 4,8 M UP TO 31.12.06 | 05/02/2007 | CASH |
| | REIMB VARIOUS DEMURRAGES | 05/02/2007 | CASH |
| 263,244,08 | PART REIMB LOAN 4,8 M - LOAN 9 AND 10 / 2005 | 05/02/2007 | |
| 39,405,55 | REIMB INTEREST ON 4,8 M LOAN UP TO 05/02/2007 | 20/02/2007 | CASH |
| | | 20/02/2007 | |
| 150,054,84 | PART REIMB LOAN 4,8 M - LOAN 9 AND 10 / 2005 | 20/02/2007 | CASH |
| 15,994,66 | REIMB INTERESTS 4,8 M 05/02-23.02 | 21/02/2007 | |
| 191,031,51 | PART REIMB LOAN 4,8 M - LOAN 9 AND 10 /2005 | 21/02/2007 | CASH |
| 121,401,69 | SEE DETAILS ON THE NET | 12/04/2007 | CASH |
| 49,232,75 | INTERESTS ON 4,8 M - LOAN 9 AND 10 / 2005 | 12/04/2007 | |
| 28,366,50 | PART REIMB LOAN 4,8 M - LOAN 9 148 | 07/05/2007 | c note 1423 |
| 162,701,43 | OFFSET WITH PROG TRANS INV 133A - REIMB LOAN | 10/05/2007 | c note 1424 |
| 67,600,00 | OFFSET WITH PROG TRANS INV 156 - REIMB LOAN | 18/05/2007 | c note 1425 |
| 6,673,18 | OFFSET WITH PROG TRANS INV 195 - REIMB LOAN | 07/06/2007 | c note 1426 |
| 164,836,93 | INTERESTS ON LOAN 4,8 12/04-7/06 | 25/06/2007 | CASH |
| 146,829,64 | PART REIMB LOAN 4,8 M - LOAN 9 AND 10 / 2005 | 25/06/2007 | CASH |
| 15,952,63 | Int. On loan. 25/06 inv.IF. 247@ | 06/07/2007 | credit note 1427 offset |
| 23,431,25 | INTERESTS ON LOAN 25,6-31.07 | 31/07/2007 | transhipment |
| 30,670,06 | Demurrages Seychelles Pride | 31/07/2007 | balance up to july 07 |
| 71,695,86 | Additives Alfa Marmara | 31/07/2007 | balance up to july 07 |
| 5,603,50 | reimbursement loan | 31/07/2007 | |
| | reimb. Through credit note selay challenger 10.12.08 | 30/09/2007 | cr. Note 1428 |
| | | 30/09/2007 | tranship.offs |
| | | | |
| BALANCE 2007 | 2,049,758,43 | AS AT | 23/11/2007 |
| | 3,537,858,76 | | |
| | 30,714,73 PARTIAL REIMBURSEMENT OF LOAN | | |

29/11/2007 / 17.15

| REIMBURSEMENT AGREED | AMOUNT OF LOAN | PERIOD OF LOAN FROM | TO | DAYS | LIBOR 1 year | RATE (plus 3%) 8,41 (3.0000) | INTEREST ON LOAN |
|---|---|---|---|---|---|---|---|
| Addendum 67 dtd 18/02/2008 | $ 4,818,000.00 | 18/05/2006 17/05/2007 | | | 5,4125 | | |
| $ 283,344.06 | $ 4,818,000.00 | 01/01/2007 | 05/02/2007 | 35 | 5,41250 | 8,41250 | 39,405.55 |
| $ 150,054.84 | $ 4,664,785.94 | 06/02/2007 | 20/02/2007 | 15 | 5,41250 | 8,41250 | 15,985.97 |
| $ 191,021.51 | $ 4,484,731.10 | 20/02/2007 | 21/02/2007 | 1 | 5,41250 | 8,41250 | 1,028.29 |
| $ 29,365.59 | $ 4,315,879.89 | 21/02/2007 | 12/04/2007 | 50 | 5,41250 | 8,41250 | 49,252.75 |
| $ 162,701.43 | $ 4,194,214.03 | 12/04/2007 | 07/05/2007 | 25 | 5,41250 | 8,41250 | 24,444.88 |
| $ 57,500.00 | $ 4,031,512.60 | 07/05/2007 | 10/05/2007 | 3 | 5,41250 | 8,41250 | 2,819.32 |
| $ 6,673.15 | $ 3,984,113.60 | 10/05/2007 | 18/05/2007 | 8 | 5,41250 | 8,41250 | 7,410.69 |
| $ 164,538.03 | $ 3,937,439.42 | 18/05/2007 | 07/06/2007 | 20 | 5,41250 | 8,41250 | 18,495.53 |
| $ 71,955.61 | $ 3,792,832.49 | 07/06/2007 | 25/06/2007 | 18 | 5,41250 | 8,41250 | 15,952.63 |
| $ 5,603.90 | $ 3,646,772.85 | 25/06/2007 | 31/07/2007 | 36 | 5,41250 | 8,41250 | 30,070.06 |
| $ 30,714.73 | $ 3,574,776.91 | 31/07/2007 | 30/09/2007 | 61 | 5,41250 | 8,41250 | 50,868.28 |
| | $ 3,568,572.69 | | | | | | |
| | $ 3,537,858.71 | | | | | | |
| | $ | | | 0 | | | |
| $1,280,141.34 | | | | | | | 256,294.10 |

LOAN 5.3 M VIRGIN NAPHTA

# PETRACO OIL COMPANY LTD

Messrs.
PROGETRA SA
Viale S. Franscini 16
6900 Lugano

Lugano, 30.11.2007

OUTSTANDING LOAN

Dear Sirs,

We refer to our letter dated 28.11.2007 and we hereby
enclose the corrected invoice no. 1495 for USD 25,454.25
(i.o. $ 16,991.27).

Consequently, we further enclose the corrected details of the
loan outstanding which shows an amount of USD 3'537'858.76
still due to us.

We kindly ask you to return copy of this letter duly signed by
authorised officers as an acknowledgement of the outstanding
amount under the loan granted to you.

Very best regards,

PETRACO OIL CO LTD
R. BONZI



# EXHIBIT "E"

4 More London riverside

**T/** +44 (0)20 7379 0000
**F/** +44 (0)20 7379 6854
**DX/** 132076 London Bridge 4

info@lg-legal.com
www.lg-legal.com



# Fax

| TO | | | FROM | |
|---|---|---|---|---|
| **Attention of** | Signora Isabelle Fahey/Mrs Irina Pirimova | | **Name** | Imogen Rumbold |
| **Your ref** | | | **Our ref** | IJR/P2946/19 |
| **Company** | Progetra SA | | **Date** | 6 May 2008 |
| **F/** | 00 41 91 922 2275 | | **No. of pages** | 2 |
| | | | **Direct T/** | +44 (0)20 7759 6402 |
| | | | **Direct F/** | +44 (0)20 7173 8402 |

Dear Sirs

**Contract No. P-09/3 dated 27th July 2004**

We are solicitors, Lawrence Graham, of the address and details appearing below. We are instructed by Petraco Oil Company Limited to assist them in the recovery of sums due under the above-mentioned contract and various addenda thereto. As you will be aware, our clients have claims, inter alia, for pre-payment for cargoes not yet supplied; demurrage; shifting expenses and for damages generally. The purpose of this fax is to advise you that our clients call for arbitration under the above mentioned contract and thus wish to constitute a tribunal with authority to hear all disputes arising under the above-mentioned contract and addenda thereto, including the disputes outlined above.

The relevant arbitration clause in the contract provides for the parties to submit all their disputes to arbitration in London. English law also governs the contract.

Our clients propose that one of the following arbitrators should be appointed to hear the relevant disputes:-

Mr Mark Hamsher
Arbitrator

This message is sent in confidence to the addressee(s) only. It may contain legally privileged information and may not be disclosed to anyone else. Unauthorised recipients are requested to preserve this confidentiality and to advise the sender immediately of any mistake in transmission.

Lawrence Graham LLP is a limited liability partnership registered in England and Wales under registration number OC307935 and is regulated by the Solicitors Regulation Authority. A list of members may be inspected at 4 More London Riverside, its registered office. All members of Lawrence Graham LLP are solicitors.

6673008.1

18c Ensign Street
London
E1 8JD

Phone: +44 (0) 20  7265 1946
Mobile: 07957 647 494
Fax: +44 (0) 20  7702 2520
E-mail: mark@markhamsher.com


Mr Bruce Harris
Flat 101
7 High Holborn
London
WC1V 6DR

Phone: +44 (0) 20  7404 9823
Fax: +44 (0) 20  7404 9824
E-mail: bruce.harris@bruceharris.org.uk.

Mr Robert Gaisford
Maritime Arbitrator
Bramdean
Stonegate
Wadhurst
East Sussex
TN5 7EP

Phone: 01580 200910
Fax: 01580 201124
E-mail: rgaisford@msn.com

Please, within the next 14 days, agree that one of the above-mentioned should be appointed as sole arbitrator, alternatively provide us with a list of suitable arbitrators for our clients to consider. Should you prefer to do so, our clients would be willing to submit these disputes to a panel of three arbitrators, one to be appointed by each of the parties and the third to be appointed by the arbitrators so chosen.  We would ask that you also respond on this proposal within the next 14 days.

Yours faithfully

**LAWRENCE GRAHAM LLP**

6673008.1

# EXHIBIT "F"

**BRUNONI · MOLINO · MOTTIS · ADAMI**
STUDIO LEGALE E NOTARILE

Lugano
Brenno Brunoni, notaio *
Andrea Molino
Davide Mottis, notaio
Francesco Adami, notaio
Mauro Cavadini, notaio
Dr. Matteo Galante
Dr. Simone Egeler Bernasconi, LL.M. **
Davide Jermini, notaio, lic. oec. HSG

Donatella Monti Lang
Mauro Beretta, notaio
Claudia Steger Bizzini, notaio

Karin Valenzano Rossi, notaio
Sharon Guggiari, notaio
Lorenza Rossini Scamalenghi ·
Massimo Quadri
Giacomo Pasloli

Lic. iur. Andrea Visani, lic. oec. HSG °
M.Law Maurizio Agustoni °
Lic. iur. Marco Vedovatti °
Lic. iur. Manuel Borla, M.B.L °

Locarno
Francesco Adami, notaio
Claudia Adami, notaio
Susy Pedina Quadri, notaio °

Lic. iur. Giorgia Scolari Stubenvoll °

iscritti al registro degli avvocati
del Cantone Ticino ·

°     Mediatore FSA
**    Esperto fiscale diplomato federale
*     iscritti nell'elenco dei praticanti
      del Cantone Ticino

Lawrence Graham LLP
Kind att. of Mr. Imogen Rumbold
4 More London Riverside
London SE1 2AU

Lugano, 26 May 2008

MO/hs

CONTRACT NR. P-09/3 DATED 27 JULY 2004

Dear Sirs,

We have examined with our client your request dated 6 May 2008 and we can not agree with Petraco Oil Company Ltd. to start arbitration proceedings and therefore we can not agree on the appointment of any arbitrator proposed in your letter dated 6 May 2008.

As your client knows, Progetra SA is discussing with its creditors for an assessment of the claims and debts with every party involved, included Petraco Oil Company Ltd.

An external company has been appointed by Progetra SA in order to determine whether Progetra SA may be debtor or creditor with regard to each party and to establish the sums owed or claimed by Progetra SA.

This survey was started upon the understanding with the different parties involved that no party was going to start proceedings before the completion of such survey, which is scheduled to be due in June.

Petraco Oil company Ltd. disregarded the common understanding by filing an attachment in New York, which is currently being opposed by Progetra SA.

CH 6901 Lugano
Via G.B. Pioda 14
Casella postale 6481
tel.   +41 91 911 74 11
fax   +41 91 923 94 68
e-mail: info@legalnotarile.ch

CH 6601 Locarno
Via Santa Caterina 1
Casella postale 1164
tel.   +41 91 751 60 00
fax   +41 91 751 66 41
e-mail: infoloc@legalnotarile.ch

www.legalnotarile.ch

[◉] BRUNONI · MOLINO · MOTTIS · ADAMI
STUDIO LEGALE E NOTARILE

Under those circumstances Progetra SA is of the view that Petraco Oil Company Ltd. is not entitled to start arbitration proceedings or any other enforcement proceedings.

Since at this stage we do not know which claims your client intends to submit to arbitration, we reserve also the right to dispute the existence and relevance of the arbitration clause with regard to claims that Petraco may raise.

Finally, we reserve the right to file counterclaims or to set off entirely or partially claims raised by Petraco with claims advanced by Progetra SA.

Yours sincerely,

Andrea Molino

−2−