UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
PETRACO OIL CO. LTD.

                Plaintiff,                08-cv-03115 (PAC)(THK)

   -against-

PROGETRA S.A.

                Defendant.
------------------------------------------------------x

## REPLY MEMORANDUM OF LAW IN
## FURTHER SUPPORT OF INTERVENOR'S
## MOTION TO VACATE ORDER OF MARITIME ATTACHMENT

Kavanagh Maloney & Osnato LLP
415 Madison Avenue
New York NY 10017
212.207.8400

*Attorneys for Intervenor*
Raiffeisen Zentralbank Österreich A.G.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................ii

I.  THIS COURT DOES NOT
    HAVE ADMIRALTY JURISDICTION.................................................................1

    A.  PLAINTIFF'S JURISDICTIONAL
        ANALYSIS IS INCONSISTENT WITH
        *NORFOLK SOUTHERN* AND *FOLKSAMERICA*............................1

        1.  The Severability Exception Is No Longer Authoritative..............2

        2.  The Principal Objective of the
            Gasoil Contract Is Not Maritime Commerce..........................4

    B.  PLAINTIFF HAS NOT ESTABLISHED THAT THE
        ATTACHED EFT WAS EVER WITHIN THIS DISTRICT.................5

II. RZB HAS STANDING....................................................................6

CONCLUSION.......................................................................................7

# TABLE OF AUTHORITIES

**Cases**

*Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*,
   460 F.3d 434 (2d Cir. 2006)..........................................................1,5,7

*Aston Agro-Industrial AG v. Star Grain Ltd.*,
   2006 WL 3755156 (S.D.N.Y. 2006)...................................................5

*Centrament Trading S.A. v. Egyptian American Steel Rolling Co.*,
   07 Civ. 6379 (S.D.N.Y. 2007)..........................................................5

*Dolco Investments, Ltd. v. Moonriver Development, Ltd.*,
   486 F.Supp.2d 261 (S.D.N.Y. 2007)..................................................6

*Folksamerica Reins. Co. v. Clean Water of New York, Inc.*,
   413 F.3d 307 (2d Cir. 2005)........................................................2,3,4,5

*Interocean Shipping Co. v. Nat'l hipping & Trading Corp.*,
   462 F.2d 673 (2d Cir. 1972)..............................................................5

*Norfolk Southern Railway Co. v. Kirby*, 543 U.S. 14 (2004)..........................2,3,4,5

*Sentry Select Ins. Co. v. Royal Ins. Co. of America*,
   481 F.3d 1208 (9th Cir. 2006)..........................................................3,4

*Woodcraft Works v. U.S.*, 152 F. Supp. 82 (Ct. Cl. 1957)...................................5

**Other Authorities**

28 U.S.C. § 1333.....................................................................................2

Rule E of the Supplemental Rules for Certain Admiralty and Maritime Claims............7

Intervenor Raiffeisen Zentralbank Österreich AG ("RZB") submits this memorandum of law in reply to the opposition memorandum of Plaintiff Petraco Oil Co. Ltd. ("Petraco"), and in further support of its motion to, *inter alia*, vacate this Court's March 31, 2008 ex parte Order for process of maritime attachment.

## I.

## THIS COURT DOES NOT HAVE ADMIRALTY JURISDICTION

It is undisputed that pursuant to *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434 (2d Cir. 2006), this Court must vacate the maritime EFT attachment unless the *Plaintiff* can establish that:

> 1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment.

*Aqua Stoli*, 460 F.3d at 445.

In its opposition papers, Petraco has not established either the first element (a prima facie admiralty claim) or the third element (that Defendant's property may be found in the Southern District of New York).

**A.   PLAINTIFF'S JURISDICTIONAL ANALYSIS IS INCONSISTENT WITH *NORFOLK SOUTHERN* AND *FOLKSAMERICA***

At page 19 of its brief, Plaintiff, in seeking to establish that it has a prima facie admiralty claim, states that the Gasoil Contract is a "mixed" contract containing both maritime and non-maritime provisions. Plaintiff then describes a general rule that mixed contracts are not maritime contracts. Pl.'s Mem. at 19. Then, citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 109 (2d Cir. 1997), Plaintiff contends that there are currently two applicable exceptions to the general rule. Pl.'s Mem.

at 19. As a first purported exception, Plaintiff quotes *Folksamerica Reins. Co. v. Clean Water of New York, Inc.*, 413 F.3d 307 (2d Cir. 2005) and claims that federal courts have jurisdiction over a mixed contract if "... the claim arises from a breach of maritime obligations that are severable from the non-maritime obligations of the contract." Pl.'s Mem. at 19, *quoting Folksamerica* at 314. With respect to the second purported exception, Plaintiff contends the exception applies when the non-maritime aspects of a contract are "merely incidental" to the maritime aspects. Pl.'s Mem. at 19. As supposed authority, Plaintiff again cites *Folksamerica* at 314. Pl.'s Mem. at 19.

In its initial brief, RZB argued that the Gasoil Contract was not a maritime contract under *Norfolk Southern Co. v. Kirby*, 543 U.S. 14 (2004). RZB Mem. at 4-6. In response, Plaintiff explicitly relies on the first exception, *i.e.*, the severability exception, for the purpose of establishing that it has a prima facie admiralty claim. Pl.'s Mem. at 19. Therefore, if the severability exception cannot be invoked, Petraco does not have a prima facie admiralty claim and this Court lacks admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1).

1.  **The Severability Exception Is No Longer Authoritative**

Plaintiff's invocation of the "severability exception" is without merit. The two exceptions cited by Petraco did not survive *Norfolk Southern* and Plaintiff's attempted use of the severability exception after the Second Circuit's *Folksamerica* opinion is improper.

In *Norfolk Southern*, the Supreme Court analyzed bills of lading that contained both maritime and non-maritime elements (*i.e.*, they were "mixed" contracts). After analyzing the bills of lading, the Court held 9-0 that, when determining whether a contract is a "maritime" contract subject to the admiralty jurisdiction of the United States,

federal courts must use a "conceptual" approach to the contracts before them. *Id.* at 23-24. Pursuant to this approach, courts must consider "'the nature and character of the contract,' and the true criterion is whether it has 'reference to maritime service or maritime transactions.'" *Id.* at 24, *quoting North Pacific S.S. Co. v. Hall Brothers Marine Railway & Shipbuilding Co.*, 249 U.S. 119, 125 (1919). In applying this conceptual approach, federal courts should focus on "whether the principal objective of a contract is maritime commerce." *Id.* at 25.

The Second Circuit analyzed *Norfolk Southern* in *Folksamerica*. The panel addressed the post-*Norfolk Southern* applicability of the "incidental" exception, which was the only exception before it, and held that the exception was no longer valid, as *Norfolk Southern*'s conceptual approach "calls for reconsideration of our precedent." *Folksamerica* at 314. The portions of *Folksamerica* quoted and cited by Plaintiff in its brief are the portions in which the Court is describing the pre-*Norfolk Southern* precedent it thereafter reconsiders. *Folksamerica* at 314-15. In adopting *Norfolk Southern*'s conceptual approach, the Second Circuit held that *Norfolk Southern* changed the relevant inquiry from whether a contract's non-maritime elements were "merely incidental," to focusing on "whether the principal objective of a contract is maritime commerce." *Id.* at 315, *quoting Norfolk Southern*, 543 U.S. at 25.

Plaintiff therefore applies the wrong admiralty test. The Second Circuit now applies the *Norfolk Southern* "conceptual" test to the contracts before it, and no longer applies its pre-*Norfolk Southern* precedent. *Folksamerica* at 314-15.

In *Sentry Select Ins. Co. v. Royal Ins. Co. of America*, 481 F.3d 1208 (9th Cir. 2006), the Ninth Circuit closely analyzed the severability exception and held that the

severability exception "collapses in the wake of the *Norfolk* Court's conceptually-based 'primary objective' test." *Id.* at 1218.

Accordingly, this Court's analysis of the Gasoil Contract does not involve a determination of whether certain maritime obligations can be severed from the contract. After the Second Circuit's 2005 adoption of *Norfolk Southern*'s conceptual approach to contracts, the severability exception is no longer valid. Pursuant to *Norfolk Southern*, *Folksamerica*, and *Sentry*, the proper analysis involves a conceptual view of the Gasoil Contract as a whole, and admiralty jurisdiction exists only if the "principal objective" of the Gasoil Contract "is maritime commerce." *Norfolk Southern*, 543 U.S. at 25; *Folksamerica*, 413 F.3d at 314-15; *Sentry*, 481 F.3d at 1218.

### 2. The Principal Objective of the Gasoil Contract Is Not Maritime Commerce

Applying the Second Circuit's conceptual approach to the Gasoil Contract reveals that the Gasoil Contract's "principal objective" is not "maritime commerce," but Progetra's sale of a product (low-density Russian gasoil) to Petraco. As described in RZB's opening brief:

- Petraco and Progetra, realizing that their agreement was an international sale of goods, agreed that English law would apply and agreed that the CISG would not apply. Mem. at 4-5.

- the Gasoil Contract is F.O.B., meaning that the agreement does not apply to the actual shipping of oil (*i.e.*, does not apply to "maritime commerce"), as once the oil entered a future ship's intake valve, and well before that ship began to move, the gasoil and all accompanying risk had already passed to Petraco as buyer. Mem. at 5.[1]

---

[1] At page 20 of its opposition brief, Petraco admits that "title will have passed once the cargo passes over the ship's flange."

- the Gasoil Contract does not involve an actual journey over navigable waters and is not an agreement with a shipper or ship owner. Mem. at 6.[2]

- a charter party or bill of lading, contracts actually covering a nautical voyage and the two types of contracts traditionally considered maritime by our federal courts, are not before the Court in this case. Mem. at 6.[3]

Accordingly: (1) since the "principal objective" of the Gasoil Contract is not "maritime commerce," the Gasoil Contract is not a maritime contract subject to the admiralty jurisdiction of the United States; and (2) this Court's March 31, 2008 ex parte Order for process of maritime attachment must be vacated.

## B. PLAINTIFF HAS NOT ESTABLISHED THAT THE ATTACHED EFT WAS EVER WITHIN THIS DISTRICT

Not only must Plaintiff establish that, when viewed as a whole, the Gasoil Contract's principal objective is maritime commerce (which it cannot do), Plaintiff must also establish that the relevant EFT was transmitted through the Southern District of New York. *Aqua Stoli*, 460 F.3d at 445. This geographical requirement has not been established.

In its opposition papers, Petraco did not submit an affidavit establishing that the EFT traveled through Manhattan, or any of the seven other counties in this District. The

---

[2] At pages 20-23 of its opposition brief, Petraco discusses the demurrage clause in the Gasoil Contract, a clause that does not make the Gasoil Contract a "maritime" contract under *Norfolk Southern* and *Folksamerica*. Moreover, the demurrage clause does not refer directly to demurrage but, as in *Aston Agro-Industrial AG v. Star Grain Ltd.*, 2006 WL 3755156 (S.D.N.Y. 2006), is an indirect reference to a future applicable charter party setting forth the actual demurrage. The Gasoil Contract calls for *indemnity* of any potential future demurrage charges, and does not concern itself with actual, direct demurrage charges owed to a ship owner. *See Interocean Shipping Co. v. Nat'l Shipping & Trading Corp.*, 462 F.2d 673, 678 (2d Cir. 1972) (agreement to act as surety on a maritime contract is not maritime in nature).
[3] At pages 22-23 of its brief, Petraco cites an unpublished decision in *Centramet Trading S.A. v. Egyptian American Steel Rolling Co.*, 07 Civ. 6379 (S.D.N.Y. 2007), purportedly holding that an indirect demurrage claim is subject to admiralty jurisdiction. However, *Centramet* did not involve a sales contract but concerned a "voyage charter agreement," Pl.'s Mem. Exh. C at p. 1, covering an actual ship voyage. Here, the Gasoil Contract is an F.O.B. sale of goods contract that then refers to the future loading of unnamed ships, which ships will transport the gasoil to unnamed destinations. *See Woodcraft Works v. U.S.*, 152 F. Supp. 82, 83 (Ct. Cl. 1957) (claims under sales contract requiring seller to indemnify purchaser for demurrage are not maritime claims).

only document placed before the Court pertaining to this issue is an unsworn letter attached to Plaintiff's brief as Exhibit A. This letter, even if it were deemed evidence properly before the Court, does not establish that the attached EFT was ever present in this District.

The letter is written by a lawyer in Philadelphia and simply informs Petraco's counsel that funds transferred through JPMorgan Chase were restrained on April 15, 2008. *See* Pl.'s Mem. at Exh. A. This is inadequate to establish that the EFT amounts were ever present at a JPMorgan Chase location within this District.

Directly on point is *Dolco Investment, Ltd. v. Moonriver Development, Ltd.*, 486 F.Supp.2d 261 (S.D.N.Y. 2007). In *Dolco*, an EFT attachment was vacated after "close inspection" of Plaintiff's evidence because it was unclear to the Court whether the attached funds were transmitted through Citibank's locations in Buffalo, New York City or Washington D.C. *Dolco* at 270. Here, as in *Dolco*, there is no credible evidence before the Court clearly establishing that the attached EFT(s) was/were transmitted through this District, as opposed to another JPMorgan Chase location or locations. *See* Pl.'s Mem. at Exh. A.

Accordingly, Plaintiff has failed on the current record to establish that an EFT was ever present in this District, and pursuant to *Aqua Stoli* and Admiralty Rules B and E, the ex parte maritime attachment in this case must be vacated.

## II.

## RZB HAS STANDING

At pages 12-16 of its brief, Petraco contends that RZB does not have standing to move to vacate the EFT attachment. This is not the case.

Under Admiralty Rule E(4)(f), "[w]henever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules." RZB is such a "person" that "claims an interest" in the attached EFT and was therefore entitled under Rule E(4)(f) to make its motion to vacate. Under Local Admiralty Rule E.2, a party wishing to claim an interest in attached property must file an intervening complaint, which is exactly what RZB did.

At this stage of the litigation, it is Plaintiff that carries the entire burden of proof, not any other party. *See* Admiralty Rule E(4)(f); *Aqua Stoli*, 460 F.3d at 445 and n.5. Thus, Petraco's argument that RZB lacks standing is without merit.

## CONCLUSION

This Court's March 31, 2008 ex parte Order for process of maritime attachment should be vacated, and thereafter the attached EFT amounts properly distributed.

Dated: July 18, 2008

KAVANAGH MALONEY & OSNATO LLP

By: /s/ Jorn A. Holl
Jorn A. Holl (JH 1119)
415 Madison Avenue, 18th Floor
New York NY 10017
(212) 207-8400
Fax: (212) 888-7324
jholl@kmollp.com

Attorneys for Intervenor RZB