UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

PETRACO OIL CO. LTD.,                          :

               Plaintiff,          :          08 Civ. 3115 (PAC)

    -against-                          :          ORDER

PROGETRA SA,                                    :

               Defendant.          :

--------------------------------------------------------x

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiff filed a verified complaint dated March 27, 2008 seeking an order of attachment up to and including the sum of $783,758.08 of the assets of Defendant, pursuant to Admiralty Rule B. The verified complaint alleged that the parties have a contract which calls for the sale of gasoil by Defendant to Plaintiff. The contract, however, is said to have certain maritime obligations, including a process for nomination of the carrying vessel, allocation of responsibility for an appropriate berth, and provisions for laytime and demurrage.

On April 1, 2008, the Court signed an Order authorizing attachment of Defendant's funds, up to $783,758.08; the Process of Maritime Attachment and Garnishment was served on numerous financial institutions. On April 15, 2008, J.P. Morgan Chase reported the restraint of $502,295.04 "being wire transferred through the Bank of Progetra SA." Counsel for the Bank requested Plaintiff's counsel to promptly notify "defendant of the restraint of these funds." (Plaintiff's Memorandum of Law In Opposition to Defendant's Motion to Vacate ("Pl. Mem.," Ex. A).

While defendant is entitled to a prompt hearing pursuant to Admiralty Rule E(4)(F), it did not file a notice of appearance until May 12, 2008, and did not seek a conference until May 27, 2008.  Shortly thereafter, Raiffeisen Zentralbank Oesterreich AG ("RZB"), an Austrian bank, filed a motion to intervene on the grounds that it is the owner of the attached funds, because Defendant had previously assigned the attached funds to RZB.[1]

The matter was fully briefed July 18, 2008.

Defendant argues that:

(a)    Plaintiff failed to use the proper channels in serving process on Defendant;
(b)    this Court lacks jurisdiction to hear this dispute because there has been no prima facie showing that this is a maritime or admiralty action under 28 U.S.C. § 1333;
(c)    this Court lacks jurisdiction to hear this dispute because there is no Federal Question under 28 U.S.C. § 1331;
(d)    this Court lacks jurisdiction to hear this dispute because the contract in dispute contains an unambiguous choice of law, venue and jurisdiction clause designating English law and arbitration in London, England; and
(e)    Defendant is entitled to recovery for interest on the wrongfully attached funds, its costs, including attorney's fees for defending this improper attachment and meritless action.

Arguments (a), (c), (d), and (e) are not appropriate vehicles for vacating the Rule B attachment.  Maritime attachments are reviewed under the test set forth in Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 445 (2d Cir. 2006):  (1) is there a valid prima facie admiralty claim against the defendant?; (2) is the defendant within the district?; (3) can the defendant's property be found within the district?; and (4) is there a statutory or maritime law ban to the attachment?  Since Defendant does not challenge Aqua Stoli standards 2-4, the Court turns to the single, critical question:  does the Plaintiff have a valid prima facie admiralty claim against the Defendant?

_____

[1] Given the disposition of this case, it is not necessary to decide RZB's motion to intervene.  The Court read RZB's papers and considers RZB as amicus curiae.

Defendant maintains the contract is for the purchase and sale of gasoil. RZB's argument is even more pointed: since the principal objective of the parties' gasoil contract is the purchase and sale of that product, it cannot be a maritime contract. Progetra never thought it was engaging in maritime commerce. It sold gasoil to Plaintiff, with delivery to take place at an oil terminal in Novorossiysk, a warm water, Russian port on the Black Sea. Upon delivery from gasoil railroad cars, the seller's responsibility ended. There is no charter party or bill of lading between the parties or any other indicia of a maritime nature in their contract.

Plaintiff maintains that the contract has certain, severable maritime obligations and it has the right to sue on these obligations. These obligations included a process for nomination (i.e., identification) of the carrying vessel the Plaintiff (buyer) would supply to take delivery of the gasoil. Further, if delays were encountered for which Plaintiff had to pay, then in certain circumstances Plaintiff had the right to pursue such claims against the gasoil seller, Progetra.

Both parties agree that <u>Norfolk Southern Railway Co. v. Kirby</u>, 543 U.S. 14 (2004) and its application here in the Second Circuit in <u>Folksamerica Reinsurance Co. v. Clean Water of New York, Inc.</u>, 413 F.3d 307 (2d Cir. 2005) are the controlling cases.

The contract between the parties provides for sale of gasoil in certain quantities with the gasoil required to meet certain product specifications. (Rumbold Affidavit, Ex. A, Clauses 1, 2, 3, 4, 5.) Price terms are set, and arrangements for payment made, with quantity and quality to be determined by a mutually agreed-upon independent inspector. (Clauses 8, 9, 10). The contract also specifies responsibility for taxes, which party bears risk, when risk passes, limitation of liability, and applicable law. (Clauses 12, 13, 14, 15). Plaintiff does not contend that any of these provisions are maritime in nature.

The contract also anticipates that buyer will take delivery of the gasoil at Novorossiysk. Accordingly, the contract specifies a nomination process under which three days in advance of the carrying vessel's arrival, the buyer provides certain agreed-upon data (name of vessel, build date, LOA, beam, DWT, and like terms). The parties agree that there are port restrictions on the size of the vessel. If the nominated vessel is late, the buyer may be held responsible. (Clause 6). The parties also agree to a process for finalizing the delivery date. (Clause 7). The nominated vessel has to have an agreed-upon pumping capacity and "[i]f this requirement is missed all consequences of the demurrage of the nominated vessel are for buyer's account." (Clause 11). Clause 11 continues:

> IF THE PERFORMING VESSEL CAN MEET THE ABOVE THE LAYTIME ALLOWED TO BE FIFTY PERCENT OF WHAT IS AVAILABLE UNDER CHARTER PARTY (PRO RATED FOR PART CARGO) PLUS 6 HOURS N.O.R.
> THE MASTER WILL CABLE OR TELEX TO SELLERS AND TO THE SHIPOWNER'S AGENTS 96/72/48/36/24/12 HOURS ETA NOTICES TO ARRIVAL LOADPORT NOVO.
>
> SELLERS RESPONSIBILITY WILL BE TO PROVIDE BUYERS WITH CARGO WITHIN AGREED LAYCAN. ANY DELAY IN BERTHING VESSEL DUE TO UNAVAILABILITY OF CARGO NOT BELONGING TO SELLER OR BUYERS INABILITY TO CONFIRM MAIN CARGO WILL BE STRICTLY FOR BUYERS ACCOUNT.
>
> IF ACTUALLY INCURRED, AS PER CHARTER PARTY RATE, TERMS AND CONDITIONS AND EXCEPTIONS OF THE BUYER'S VESSEL, BUYER'S DEMURRAGE CLAIM IF ANY TO BE FULLY DOCUMENTED (INCLUDING A COPY OF OWNER'S CLAIM, LAYTIME CALCULATION AND CHARTER PARTY) AND PRESENTED WITHIN 90 DAYS AFTER BILL OF LADING DATE, FAILING WHICH THEIR CLAIM SHALL BE DEEMED WAIVED AND ABSOLUTELY BARRED.

Plaintiff alleges that "[i]n the course of performance of the contract, Defendant incurred various obligations under Clause 7, entitled 'Delivery/Period' and/or Clause 11, entitled 'Laytime and Demurrage,' of the contract for demurrage and other charges relating to the

carriage of goods by sea totaling approximately U.S. $658,168.44." (Plaintiff's Verified

Complaint ¶ 5).

Plaintiff urges that there is a valid <u>prima facie</u> admiralty claim based on: (1) Clause 6's

nomination process for the vessel; (2) Clause 7's requirement that Defendant provide a safe berth

at a designated terminal in the port of Novorossiysk; and finally, (3) Clause 11's requirement

that the carrying vessel have certain pumping characteristics, allocation of responsibility for

delays in berthing and details of certain circumstances under which Defendant may be liable for

demurrage incurred by Plaintiff. (Pl. Mem. at 22.)

Generally, mixed contracts fall outside admiralty jurisdiction, but there are two

exceptions: (1) where the claim arises from a "breach of maritime obligations that are severable

from the non-maritime obligations of the contract . . .; [and (2)] where the non-maritime

elements are 'merely incidental' to the maritime cases." <u>Folksamerica</u>, 413 F.3d at 314

(citations omitted).

Plaintiff's claim satisfies neither exception. The Second Circuit has identified "the

important question . . . [as] whether the shipment contract's 'primary objective is to accomplish

the transportation of goods by sea.'" <u>F.H. Bertling Holding KG v. Ranhill Engineers and

Constructors SDN.BHD,</u> No. 08 Civ. 2003 (SAS), 2008 WL 2693630, at *4 (S.D.N.Y. July 9,

2008), citing <u>Folksamerica</u>, 413 F.3d at 314. The alleged maritime provisions at the heart of

Plaintiff's complaint are incidental, at best, to the chief purpose of the contract: the purchase and

sale of gasoil to be delivered to a vessel of the buyer's choosing. The seller's responsibility ends

on the shore with delivery of the gasoil.

The process of vessel nomination and advance notice, as well as specifying certain vessel

characteristics were none of the seller's responsibility. Taken together, they merely facilitate the

or the size of the trailer truck.  None of the so-called maritime terms change the seller's function: to deliver the gasoil product to a terminal where it is pumped on board the buyer's vessel or a vessel chartered by the buyer.  Use of maritime terms such as "laytime" and "demurrage" are too slender a reed to force a land based provider of gasoil out to sea.  See F.H. Bertling, 2008 WL 2693630, at *4 ("Neither clauses that are typical of a maritime contract, nor a party's past history of maritime business are sufficient to create a principal maritime objective in an otherwise non-maritime contract.") (citations and quotations omitted).

It is clear that Plaintiff has to provide the vessel to take delivery of the gasoil.  That arrangement presumably carries with it appropriate mechanisms for the allocation for delay between the vessel and the cargo owner (here, the buyer).  Any demurrage claim between the vessel and Plaintiff might result in a claim against the Defendant.  The fact that the Plaintiff has had to pay a demurrage charge to the vessel does not mean that Plaintiff's claim on or against the seller of the gasoil is maritime in nature.  See F.H. Bertling Holding KG v. Ranhill Engineers and Constructors SDN. BHD., 2008 WL 2693630, at *1.

The Process of Maritime Attachment and Garnishment is vacated.  There is no maritime jurisdiction. The Clerk of the Court is directed to close this case.

Dated:  New York, New York
        August 19, 2008

SO ORDERED

PAUL A. CROTTY
United States District Judge

6